## LAKE SHORE DUCK CLUB v. LAKE VIEW DUCK CLUB et al.

### No. 3073.  Decided June 28, 1917.  (166 Pac. 309)

1. APPEAL AND ERROR—REVIEW—EQUITY CASE.  On appeal in an equity case, the Supreme Court has power to review the testimony to determine the facts and the equities of the parties, though its views conflict with the trial court's findings.  (Page 79.)

2. WATERS AND WATER COURSES—APPROPRIATION OF WATER—IRRIGATION FOR WILD FOWL—STATUTE.  Under Comp. Laws 1907, section 1288x6, as amended by Laws 1909, c. 62, and section 1288x16, as amended by Laws 1915, c. 83, providing that any person, etc., to acquire the right to use any public water in the state, shall take certain steps, etc., an appropriation of water cannot be made for the irrigation of unsurveyed, uninclosed, unoccupied public domain of the United States for the sole production of food for wild water fowl, since to effect a valid appropriation of water the beneficial use must be one that inures to the exclusive benefit of the appropriator subject to his complete control.  (Page 80.)

3.  WATERS AND WATER COURSES—APPROPRIATION OF WATER APART FROM
    LAND.  Water may be appropriated and used on the public domain,
    and such a right acquired thereby as will be recognized and sustained,
    though the appropriator never acquires title to the land; his right to
    the water will he upheld even after he is dispossessed of the land on
    which it was used, but in such cases some sort of possessory right,
    good as against everybody but the government, must exist in favor
    of the appropriator.  (Page 81.)

Appeal from District Court, First District; *Hon. J. D. Call,*
Judge.

Action by Lake Shore Duck Club against Lake View Duck
Club, sometimes known as Lake View Gun Club and others.

Judgment for defendants.  Plaintiff appeals.

AFFIRMED.

*R. S. Farnsworth* for appellant.

*Geo. Halverson* for respondent.

THURMAN, J.

This is an action by plaintiff to quiet its title to certain
dams and ditches, water and water rights, of which it claims
to be the owner, in Box Elder County, and for damages for
the alleged wrongful interference therewith.

The complaint alleges the ownership and right of possession
of said property, and states that the water was used on certain
described lands for the propagation and growing of grasses,
tules, rushes, and other vegetation suitable for feeding wild
water fowl, and declares the same to be a beneficial use.  The
complaint then alleges the interference complained of, which
consisted of placing obstructions in plaintiff's canal, diverting
the waters thereof, and maintaining the same, to plaintiff's
injury.  Plaintiff prays for damages, and that its title to the
water and water ditches be quieted, and for injunctive relief.
The answer of the defendants admits the corporate existence
of the plaintiff and defendant corporations, and denies the
other allegations of the complaint.  It further alleges, in sub-
stance, that the individual defendants and numerous other
persons named therein are now, and for a long time have been,
the owners of several parcels of land, particularly describing

them, and for more than thirty years prior to the commencement of the action have been the owners of the right to use all of the waters of Dix creek and Warm Springs creek, and during all of said time have, by dams and ditches and natural water courses running through said land, irrigated the same for the production of natural grasses growing thereon, for watering stock, forming duck ponds, and for other beneficial purposes. It is further alleged that these acts of defendants are the acts complained of in plaintiff's complaint; that the defendant corporation is, and for a long time has been, the lessee of the owners of said lands, and the individual defendants are employees of the defendant corporation. Defendants pray for a dismissal of the action.

The court found in favor of defendants. In finding No. 2 it finds that the plaintiff, on the 25th day of September, 1915, made an application in the office of the state engineer for a right to the use of unappropriated waters for irrigation purposes from September 1st to December 31st of each and every year of First Salt creek in Box Elder County, to be applied through a ditch on unsurveyed land comprising parts of sections 5, 7, and 8, in township 7 north, range 2 west, and sections 11 and 12, township 7 north, range 3 west, Salt Lake meridian, United States survey, aggregating 800 acres, said water to be applied for the purpose of propagating grasses, tules, rushes, and other vegetation suitable for feed for wild water fowl. Finding No. 2 further states, in substance, that notice of the application was published, and, no protest being made, the application was approved by the state engineer, and returned to plaintiff April 19, 1916.

Finding 3, in substance, states that at the time of making said application the plaintiff was not, never has been, and is not now, the owner of any part of said sections 6, 7, and 8, in township 7 north, range 2 west, or sections 11 and 12, in township 7 north, range 3 west, of the Salt Lake meridian. The court then finds the construction of a canal by plaintiff leading to the lands above described in 1915 and 1916, and the placing of a dam therein by the defendants by which the water was diverted and caused to flow down a natural water

course to and upon the lands of the defendants, where the same was used for soil washing, the producing of natural grasses, pasturage, vegetation, and duck ponds, on the grounds occupied by the defendant Lake View Duck Club.

Finding 4 states, in substance, that during the time mentioned in the complaint, and prior to the diversion of the water by the defendants, all the waters of Salt creek flowing down to plaintiff's point of diversion were flowing to and upon said sections 6 and 7, which were unsurveyed lands, arid in character, but the water spread out tended to produce natural grasses, tules, rushes, and other vegetation suitable for wild water fowl; that said lands were and still are uninclosed public domain, no part of which has ever been tilled.

The other findings of the court relate solely to the diversion and use of the water by the defendants, the necessity therefor; and the conclusion of the court that the defendants rightfully committed the acts complained of; that the plaintiff was not damaged, and was not entitled to the water.

As the defendants seek only a dismissal of the action, with no prayer for equitable relief, we deem the foregoing statement sufficient, especially as the only question to be determined is, what, if any, relief is the plaintiff entitled to in view of the pleadings and facts disclosed by the record.

This is an equity case, and this court has the power to review the testimony for the purpose of determining what the facts are and the equities of the parties, even though its views are in conflict with the findings of the trial court. On the very threshold, however, of our investigation, the court finds itself confronted with a unique question,—an anomaly, perhaps, in the jurisprudence of the arid region.

Respondents, in their brief, assail the validity of the alleged appropriation relied on by plaintiff on the grounds that the lands to be irrigated are unsurveyed government domain, uninclosed, unoccupied, and uncultivated, and that the propagation of wild fowl thereon is not a beneficial use subject to private ownership. If this contention is right, every other question involved becomes wholly immaterial.

The plaintiff, in pursuance of the provisions of Comp. Laws Utah 1907, section 1288x6, as amended in 1909 (Laws 1909, c. 62), made its application in the office of the state engineer for a right to the use of unappropriated water for the irrigation of certain lands, to wit, sections 6 and 7, township 7 north, range 2 west, and sections 1 and 12, township 7 north, range 3 west, Salt Lake meridian. It is stated in the application that the land is unsurveyed, and that the water is to be used for propagating grasses, tules, rushes, and other vegetation suitable for feed for wild water fowl. The application is in due form. Notice thereof was published as provided by law. No protest was filed, and the state engineer approved the application subject to the usual conditions which, as far as the record discloses, have been fully complied with.

It will be noted that the only purpose of this appropriation is the production of food for wild water fowl on unsurveyed lands of the public domain. The court found, as we have seen, that the lands were not only public and unsurveyed, but uninclosed and untilled. It also found that the plaintiff did not own them, nor any part of them, from all of which, if the court's findings are justified by the evidence, we may draw the legitimate conclusion that plaintiff did not, and does not, own even a possessory right to any of the lands except the small spot occupied by its clubhouse which, for the purposes of this case, is wholly immaterial. These findings of the court as to the nature, character, and condition of the land upon which the water was to be used are not seriously questioned. If they are questioned at all, we are satisfied that they are sustained by a decided preponderance of the evidence.

The vital question, then, to be determined is, can an appropriation of water be made under the laws of this state for the irrigation of unsurveyed, uninclosed, unoccupied public domain of the United States for the sole production of food for wild water fowl, which, when propagated and raised, must, of necessity be as accessible to capture, destruction, and appropriation to use, by any other person who may see fit to hunt upon the land, as to the person who went through the form of making an appropriation. To our

minds it is utterly inconceivable that a valid appropriation of water can be made under the laws of this state, when the beneficial use of which, after the appropriation is made, will belong equally to every human being who seeks to enjoy it. It would be little short of an anomaly in any system of jurisprudence that would authorize the restraining of a person from diverting water used solely for the propagation of ducks, and then deny injunctive, or any, relief against the same person if he should enter upon the land irrigated, shoot the ducks ad libitum, and appropriate them to his own use. If the beneficial use for which the appropriation is made cannot, in the nature of things, belong to the appropriator, of what validity is the appropriation? The very purpose and meaning of an appropriation is to take that which was before public property and reduce it to private ownership. The whole procedure under our statute, relating to an appropriation of water, is a series of steps to that end. The section of the Compiled Laws above referred to commences:

"Any person, corporation, or association, to hereafter acquire the right to the use of any public water in the state of Utah shall," etc.

Then the successive steps are stated down to and including the issuing of the final certificate of ownership as provided in section 1288x16, as amended in 1915 (Laws 1915, c. 83). The latter part of that section declares:

"The certificate so issued and filed shall be prima facie evidence of the appropriator's right to the use of the water in the quantity, for the purpose and during the time mentioned therein, and shall be evidence of such right."

It certainly must be conceded that the purpose of the law is to endow the appropriator of the water with all the insignia of private ownership. The certificate is his deed; his evidence of title, good, at least against the state, for all it purports to be, and good as against every one else who cannot show a superior right.

The authorities cited by appellant in support of the right to appropriate water to be used on the public domain are not controverted by us, but they are not in point. It is almost a matter of common knowledge, even among     3

laymen that water may be appropriated and used on the public domain, and such a right acquired thereby as will be recognized and sustained, even though the appropriator never acquires title to the land. His right to the water may be respected and upheld even after he is dispossessed of the land upon which the water was used; but in all such cases it will appear that some sort of possessory right, good as against everybody but the government, existed in favor of the appropriator. Such is the case with the authorities cited by appellant.

It is manifest in this case that the plaintiff has no possessory right whatever to the lands upon which the water is to be applied. It is therefore impossible for it to acquire the exclusive enjoyment of the use to which the water is applied. It is not alone the fact that the lands are public domain, unsurveyed, uninclosed, unoccupied and untilled, but the fowl to be fed on the land are wild water fowl—feræ naturæ, as distinguished from domestic fowl which might possibly be the subject of private ownership even though propagated on the public domain.

We have searched in vain for any authority in support of appellant's claim of a valid appropriation of the water in controversy. The beneficial use stated in the application is not in question. We are not disposed to hold that any use of water tending to supply man or domestic animals with food is not beneficial. But for the purpose of effecting a valid appropriation of water under the statutes of this state we are decidedly of the opinion that the beneficial use contemplated in making the appropriation must be one that inures to the exclusive benefit of the appropriator and subject to his complete dominion and control. As the use in this case is not of that character, we are forced to the conclusion that plaintiff's attempted appropriation is invalid, and that defendants committed no legal wrong in the acts complained of in plaintiff's complaint.

As these views are decisive of all the assignments of error the judgment of the trial court is affirmed, with costs.

FRICK, C. J., and McCARTY, CORFMAN, and GIDEON, JJ., concur.