# LAWSON v. McBRIDE

No. 4308.   Decided January 4, 1928.   (264 P. 727.)

*Allen T. Sanford* and *C. W. Morse*, both of Salt Lake City, for appellant.

*James A. Melville, Jr.*, of Salt Lake City, for respondent.

STRAUP, J.

This appeal involves claimed rights of the parties in and to the waters of Meadow creek, a natural stream of water in Millard county. The plaintiff claims that he and his predecessors in interest, in 1894, diverted and appropriated all the waters of the stream and used them on his ranch of about 1,000 acres in irrigating crops and on pasture lands and so continued to use all of such waters from the early spring until October 1 of each year until the commencement of this action. The defendant claims the flow of the stream is variable, depending upon the amount of snowfall, and each year is from 10 to 15 cubic feet per second of time in the spring, and about 3.5 cubic feet per second of time during the summer months; that the plaintiff diverted and used from the stream only sufficient water to irrigate about 25 acres of land, and that the duty of water on such lands is 3 acre-feet of water per acre per annum, and hence the only water diverted, appropriated, and needed by the plaintiff was 75 acre-feet of water per annum; that in 1920 the defendant filed an application with the state engineer to ap-

propriate from the stream 15 cubic feet of water per second of time, which was alleged to be unappropriated water, from March 1 to October 1, of each year, to irrigate 478 acres of land; that the application was protested by the plaintiff, and on a hearing the state engineer approved the defendant's application, subject, however, to the prior rights of the plaintiff, which the engineer did not undertake to determine and did not determine. Thus the defendant, by his application, also claims the right to about all of the waters of the stream, except sufficient thereof to irrigate about 25 acres. Thereupon the plaintiff brought this action to quiet his claimed title to the use of all of the waters of the stream, to which defendant counterclaimed as indicated. The case was tried to the court.

Upon the evidence adduced the court found that plaintiff's lands suitable for farming required 3 acre-feet of water per acre per annum and the pasture lands 2 acre-feet; that at the time of and since the filing of the defendant's application with the state engineer, the flow of the stream at the defendant's proposed point of diversion, about $2\frac{1}{2}$ miles above the point of the diversion of the plaintiff, was from $3\frac{1}{2}$ cubic feet of water per second of time to more than 5 cubic feet and that all of such waters were unappropriated except such as were diverted and appropriated by the plaintiff; that the flow of the stream varied, being more than 5 cubic feet of water during the months of March, April, and May of each year, and from 2 to approximately 4 cubic feet during the summer months; that the plaintiff had irrigated and acquired a right to irrigate not to exceed 60 acres of farming lands and not to exceed 270 acres of pasture lands; that 2 cubic feet of water per second of time applied to such lands from April 1 to October 1, of each year was sufficient to enable the plaintiff to properly irrigate such lands, which was equivalent, as the court found, to 3 acre-feet per acre per annum for the 60 acres and 2 acre-feet for the 270 acres of pasture lands; that such right was superior and paramount to that of the defendant; and that the de-

fendant was entitled to the use of the remainder of such waters, not to exceed 5 cubic feet per second of time. A decree was entered accordingly, from which the plaintiff has prosecuted this appeal.

The claim made by plaintiff is that the findings are against the clear weight of the evidence; that the plaintiff had irrigated a much greater acreage of farming lands when there was sufficient water in the stream with which to irrigate them; that he used all of the waters of the stream on his lands from early spring until October 1 of each year for many years—about a quarter of a century— prior to the filing of the defendant's application with the state engineer; that the quantity of water awarded the plaintiff was insufficient to properly irrigate all the lands theretofore irrigated by him and was not sufficient to irrigate even the acreage of lands to which the court found and decreed the plaintiff had acquired a prior right to irrigate from the stream; that the court erred in not permitting the plaintiff, in the progress of the trial, to ammend his complaint, to conform to the evidence as claimed by him, by alleging that he was entitled to the use of the waters of the stream, not only from April 1 of each year as decreed by the court, but from the early spring of each year and when the waters start to flow down the stream, and erred in not permitting the plaintiff to amend his complaint so as to entitle him to winter water to water live stock, which amendments were disallowed because not timely proposed.

That the plaintiff was prior in time and prior in right to the use of the waters of the stream diverted and appropriated by him, that a beneficial use was made by him of such waters, and that no other for more than 20 years after the plaintiff diverted and used waters of the stream on his lands, claimed or asserted any right to the use of any of the waters of the stream until the filing of the defendant's application in 1920 with the state engineer, are propositions not disputed. The plaintiff gave evidence by a number of witnesses to show that he for many years prior to 1920

owned and possessed 640 acres and his brother 358 acres of lands, which comprised the ranch. The lands were fenced; a dwelling, barn, corral, and outbuildings were constructed on them and used in connection therewith. The lands are about 5 miles west of Fillmore City. Meadow creek is a natural channel or stream. Its source is 2 or 3 miles west of the town of Meadow. The stream flows in a southwesterly direction a distance of about 2½ miles to the point of defendant's proposed point of diversion; thence in a southwesterly direction about 2 miles to the plaintiff's lands; thence through his lands a distance of about 4 miles. In 1898 the plaintiff and his brother broke up about 400 acres of the ranch and planted about 300 acres in crops consisting of various grains and alfalfa. Several diverting dams and ditches were constructed by them by means of which the waters from the stream were diverted and carried on the lands. Each of two of the ditches, as originally constructed, had a capacity of about 5 or 6 cubic feet per second of time, and another about 3 or 4 cubic feet. However, as the waters later subsided, and the ditches not kept properly cleaned, they did not keep up such carrying capacity, yet had sufficient capacity to carry all the waters that flowed in the stream when diverted. For several years the plaintiff irrigated about 300 acres of cultivated lands and from 500 to 600 acres of pasture lands. All the waters of the stream were diverted and used on such lands. With such waters the plaintiff, for several years, was able to irrigate his crops three or four times a year and the pasture lands during about the whole of the irrigation season. The high waters of the stream subsided about the last of May or the first of June of each year. The flow of the stream varied accordingly to the seasons of the year and the amount of snowfall in the mountains and surrounding hills, and generally in low-water periods from 1898 to 1920 did not exceed 2 cubic feet per second of time and some seasons was less.

So far there is no substantial conflict in the evidence. In about 1900 or 1901 and until 1920 the flow of the waters

of the creek greatly decreased. As testified to by a number of plaintiff's witnesses, there were not during such period sufficient waters in the creek with which to irrigate all of the cultivated and pasture lands of the plaintiff. The plaintiff's brother continued to live on the ranch and had charge of it until 1906 or 1907, when the ranch was leased to different tenants, who occupied and farmed it until 1920, when the application of defendant was filed. Testimony was given by the plaintiff and his brother, by the tenants, and by others living in the vicinity of the ranch and familiar with it and the flow of the waters in the creek, that from 1901 to 1920, because of the decrease of the flow of the creek, the original acreage as cultivated and planted was not kept up in crops, but that all of the waters of the creek during the irrigation seasons nevertheless were diverted and applied by the plaintiff, his brother, and the tenants in the growing of crops and in irrigating the pasture lands. The testimony of the witnesses varied as to the number of acres that during such period were cultivated and irrigated. Some of the witnesses testified that in some seasons because of low water only about 20 to 40 acres were irrigated, at other seasons 50 to 60 acres, at other seasons 125 to 130 acres, and in addition thereto pasture lands on which cattle ranged and pastured.

The evidence on the part of the plaintiff seems quite clear that during such period from 1898 to 1920 all of the waters of the creek were used and applied upon plaintiff's lands during the irrigation season; that during such period no one claimed or asserted that there were any unappropriated waters in the stream, nor until the defendant filed his application with the state engineer had any one disputed plaintiff's claim to all of the waters of the stream and as by notices posted by him at different places and filed in the office of the county recorder.

In 1920 there was an unusual snowfall in the mountains and surrounding hills in the locality in question, which oc-

casioned an unusual freshet or high-water period when the snows began to melt and run off, which, to some extent at least, influenced the filing of the application by the defendant with the state engineer. By that we do not mean that the basis of the defendant's claim was merely to surplus waters in high-water periods. The basis of his claim is that the plaintiff had diverted and appropriated from the stream only sufficient waters with which to irrigate about 25 acres, and that the remainder of the stream ran to waste, which was sought to be claimed and appropriated by the defendant. The defendant gave evidence to show that by actual measurements in the years 1921 to 1924, both inclusive, the flow of the stream at his proposed point of diversion was, not 15 cubic feet per second of time as was averred in his application, but $5\frac{1}{2}$ cubic feet in high-water periods and $3\frac{1}{2}$ cubic feet in other periods, and that the flow of the stream was about the same in prior years, of which waters the defendant contended the plaintiff was entitled to only sufficient thereof to irrigate about 25 acres, and that the remainder of the stream ran to aste. To further support such claim the defendant called several witnesses, who testified that the diversion dam of the plaintiff was not a tight dam; that at different times they saw waters pass through the dam; that the dam "never shut the water off entirely"; that "water passed through it" and ran to waste in a sink below. But such witnesses did not testify, nor was there any evidence to show, what amount or quantity of waters seeped or passed through the dam. As against that testimony, the plaintiff and his brother, his tenants and others, testified that the dam was a tight dam and that no substantial amount of water seeped through it, and that all of the waters flowing in the stream were diverted and used on plaintiff's lands; that there was not sufficient water to irrigate all of the lands cultivated by the plaintiff, and, because of a want of sufficient water in the stream, crops that had been planted did not mature and in instances burned up, as they testified. To support the claim of the defendant he also

refers to the testimony of his witnesses, who testified that on measurements made the flow of the stream in high water was 5½ cubic feet per second of time and at other periods 3½ second feet, and to the testimony of witnesses that the plaintiff for a number of years prior to 1920 had irrigated only 20 to 40 or 50 to 60 acres of land, from which it is argued that of necessity a large quantity of water remained in the stream and went to waste. Based upon such testimony there undoubtedly is force to the argument or inference. But, again, it must be noted that the witnesses testifying as to such acreage irrigated also testified that the reason more lands were not irrigated was because there was not sufficient water in the stream with which to irrigate them, and that crops which had been planted failed to mature because of lack of water in the stream.

Thus, on a review of the record, we are of the opinion that the greater weight of the evidence shows that the findings and decree of the court below are wrong and that the plaintiff was not awarded a use of all the waters to which he was entitled and which had been diverted and appropriated by him prior to the filing of the defendant's application. We think the greater weight of the evidence shows that the plaintiff, for many years prior to the filing of the application, had each year diverted and appropriated substantially all of the waters flowing in the stream from early spring to October 1. We also are of the opinion that the court erred in not permitting the plaintiff to amend his complaint so as to entitle him to the use of water each year, not only from April 1, but from early spring and when the waters begin to come down the stream. It is shown by the evidence that the plaintiff, during high water, for many years prior to the filing of the application by the defendant, had diverted and used such waters on his lands, and that such use was a beneficial use; that carrying such waters upon his lands and wetting and soaking them augmented the irrigation of his lands in low-water periods. The decree shut the plaintiff off from the use of such waters

and gave them to the defendant, the whole of them until April 1, and thereafter all of them but 2 cubic feet per second of time. Such deprived the plaintiff of a substantial and vested right acquired by him prior to the defendant's application. We also are of the opinion that the court erred in not permitting plaintiff's amendment so as to entitle him to the use of winter water.

On the record the average flow of the stream during March, April, and May, the high-water period, is in excess of 5 second feet; the low-water period from June 1st to October 1st is not to exceed $3\frac{1}{2}$ second feet.

We are of the opinion that the plaintiff, at his diversion point or points, each year, from early spring and when the waters begin to flow, and during March, April, and May to June 1st, the high-water period, is entitled to 4 cubic feet of water per second of time; from June 1st to October 1st, to 3 cubic feet of water per second of time; and from October 1st and during the winter months to sufficient water, the quantity thereof to be determined by the trial court, for watering live stock and for culinary purposes.

The judgment of the court below is therefore reversed and the cause is remanded, with directions that the court make findings and render a decree in accordance with the views herein expressed. Costs to the appellant.

THURMAN, C. J., and CHERRY, HANSEN, and GIDEON, JJ., concur.