ROCKY FORD IRR. CO. et al. v. KENTS LAKE
RESERVOIR CO. et al.

No. 6473. Decided March 24, 1943. (135 P. 2d 108.)

204

See 67 C. J. Waters, sec. 501; 27 R. C. L. 1281 et seq.

*Cline, Wilson & Cline,* of Milford, and *H. R. Waldo,* of Salt Lake City, for appellants.

*Elias Hansen,* of Salt Lake City, *LeRoy H. Cox,* of St. George, *Grover A. Giles,* Atty. Gen., and *E. J. Skeen,* of Salt Lake City, for respondents.

WOLFE, Chief Justice.

In April, 1938, the defendant Kents Lake Reservoir Company filed with the defendant State Engineer an application to change the place of storage of 830 acre feet of water per annum out of a previously awarded storage right of 1,660 acre feet from the South Fork of Beaver River to a proposed reservoir site on the main channel of Beaver River commonly called "Three Creeks." Another application was filed by Kents Lake in March, 1940, with the State Engineer to appropriate for annual storage from Beaver River 1,193 acre feet of water alleged to be unappropriated, the same to be stored in the above mentioned proposed reservoir at Three Creeks.

The plaintiffs, Rocky Ford Irrigation Company and the Telluride Power Company filed protests to the granting of the applications. The State Engineer overruled the protests and approved the applications. Whereupon, the plaintiffs pursuant to Sec. 100-3-14, R. S. U. 1933 as amended by Sec. 1, Chap. 130, Laws of Utah 1937, filed a petition in the district court for a plenary review of the decision of the State Engineer. The district court, after hearing, affirmed the Engineer's decision and this appeal results.

For the most part, the evidence can best be detailed in conjunction with the analyzation of the controlling legal principles, but a few preliminary statements are necessary for a clear approach to the points involved. Kents Lake and both plaintiffs are users of water from Beaver River and its tributaries. The rights of all parties were determined and decreed in 1931 by the District Court of Beaver County in the case of *Hardy* v. *Beaver County Irrigation Company.* By this decree Kents Lake was awarded the right to divert and store 1,660 acre feet of water from the South Fork of Beaver River any time between April 1st and June

30th of each year, provided, however, that no diversions for storage could be made when the flow of water in Beaver River, as measured at the government gauging station at the mouth of Beaver Canyon, was below 164 c.f.s. This storage right has a priority date of 1890. Rocky Ford Irrigation Company was awarded: (1) A right to store 25,447 acre feet in the Rocky Ford Reservoir from October 1st of each year until June 30th of the following year with a priority date of 1907; (2) a right to 120 c.f.s. to be used by a direct diversion from Beaver River from July 1st to Sept. 30th each year with a priority date of 1909; and (3) a direct flow right to 150 c.f.s. to be used from March 15th to June 30th carrying a priority date of 1907.

Since the entry of the general adjudication decree in 1931, Kents Lake has never had storage capacity for more than 950 acre feet. During certain seasons since 1931, there has not been sufficient water above the 164 c.f.s. as measured at the gauging station at the South Fork point of diversion to allow Kents Lake to store the full 1,660 acre feet as awarded to it by the decree even if it had had the storage capacity. In 1931, 1934, and 1939 it appears that no water whatever was available for storage. At the new proposed Three Creeks site, there is a substantially larger flow of water—a flow sufficient to satisfy the 1,660 acre feet decreed right practically every season.

In opposing the proposed change in place of storage plaintiffs contend: (1) That Kents Lake, since the entry of the decree awarding it 1,660 acre feet, has forfeited by nonuser for over five years all its rights under the decree to water in excess of 950 acre feet, and that if it continues to store 830 acre feet at the South Fork site, it has at most only 120 acre feet available for transfer to the proposed Three Creeks site for storage; and (2) that were there no forfeiture, the court in allowing a transfer in place of storage from South Fork (where usually the flow is insufficient to fill the 1,660 acre feet decreed right) to Three Creeks (where usually there is sufficient water to fill the decreed right) should limit such storage so that the total amount

stored at both South Fork and Three Creeks would not exceed the amount that would have been available to Kents Lake at the South Fork site. Otherwise, it is contended, the proposed change would constitute an enlargement of the Kents Lake rights at the expense of the plaintiffs. If not so limited, Kents Lake could store during most years 830 acre feet at its present reservoirs in South Fork, and every year store 830 acre feet at Three Creks, thus insuring a total of 1,660 acre feet in most years, while at the present location there is seldom 1,660 acre feet available and in some years not even the 950 acre ft.

In support of the proposed change the defendant admits, as well it must (see Hutchins, Selected Problems in Law of Water Rights in the West, 1942, p. 336), that storage under the transferred rights must be limited to the amount that would have been available to Kents Lake for storage at the present South Fork location during the same period. The combined storage at South Fork and at Three Creeks could not exceed the total amount available for storage at that time in the South Fork. The lower court came to this same conclusion, and so stated in its Conclusions of Law, but the decree of the court carries no such provision. This admission by the defendants, which admission plaintiffs assert was made for the first time on appeal, disposes of one of the main objections raised by the plaintiffs to the approval of the application for a change in place of storage.

We next turn to the question of statutory forfeiture by nonuser for over five years. The statute, Sec. 100-1-4, Utah Code Annotated 1943, under which plaintiffs contend that a forfeiture has occurred provides:

"When an appropriator or his successor in interest shall abandon or cease to use water for a period of five years the right shall cease, and thereupon such water shall revert to the public, and may be again appropriated as provided in this title."

This statute was in effect during all times involved in this suit. In construing statutes similar to this, the courts have

uniformly held that forfeiture will not operate in those cases where the failure to use is the result of physical causes beyond the control of the appropriator such ▪ as floods which destroy his dams and ditches, draughts, etc., where the appropriator is ready and willing to divert the water when it is naturally available. *Morris v. Bean*, C.C., 146 F. 423, affirmed, 9 Cir., 159 F. 651 and 221 U. S. 485, 31 S. Ct. 703, 55 L. Ed. 821; *Ramsay v. Gottsche*, 51 Wyo. 516, 69 P. 2d 535; *Horse Creek Conservation Dist.* v. *Lincoln Land Co.*, 54 Wyo. 320, 92 P. 2d 572; *New Mexico Products Co.* v. *New Mexico Power Co.*, 42 N. M. 311, 77 P. 2d 634; *In re Manse Spring and its Tributaries*, 60 Nev. 280, 108 P. 2d 311; Hutchings, Selected Problems in the Law of Water Rights in the West, p. 396.

The uncontradicted evidence shows that there seldom was sufficient water available at South Fork to allow Kents Lake to store the full 1,660 acre feet. In 1931, 1934, and 1939 no water whatever was available for storage by Kents Lake. During every other year from 1931 to 1940, Kents Lake stored 950 acre feet whether it was entitled to store that much or not. There is a conflict in the evidence as to the exact amount of water available each year. Mr. Ullrich and Mr. Lofgren, both civil engineers, were called by the plaintiffs and the defendant respectively. From rather limited and incomplete data concerning amount of snow fall, snow melting records, and data in regards to the area encompassed by the South Fork water shed, they each gave an opinion as to the amount of water available each year. Ullrich concluded that between April 1st and June 30th of each year the following amounts of water were available for storage by Kents Lake:

| 1931—none | 1935—556 | 1938—700 |
|-----------|----------|----------|
| 1932—538 | 1936—684 | 1939—none |
| 1933—566 | 1937—1519 | 1940—489 |
| 1934—none | | |

The corresponding figures given by Lofgren were:

| | | |
|---|---|---|
| 1931—none | 1935—1400 | 1939—none |
| 1932—1308 | 1936—1790 | 1940—1535 |
| 1933—566 | 1937—3050 | |
| 1934—none | 1938—1650 | |

It becomes obvious that if the figures given by plaintiffs' witness Ullrich are correct, there has been no forfeiture by Kents Lake, for every year except 1937 when any water has been available for storage Kents Lake by storing 950 acre feet stored more water than its rights entitled it to store. However, if the figures adduced by Lofgren are correct, there has been considerably more water available for storage, except in 1931, 1934, and 1939 than was actually stored by Kents Lake. Therefore, if there were a five year continuous period during which Kents Lake failed to use material amounts of available water, we should hold that a forfeiture of at least part of its right has occurred by virtue of this nonuse.

On this conflicting evidence the trial court found that:

"Since the decree above mentioned was entered in Nov. 13, 1931, except during the years 1934 and 1939, some water has been available for storage by the defendant Kents Lake Reservoir Company in excess of 950 acre feet."

It further found that since there was no measuring device at South Fork to test the amount of water available, it could not from the evidence adduced determine the exact quantity of water available. It did find, however, that there had been no five year continuous period during which Kents Lake failed to use available water.

If this were all the evidence and all the findings we would, as the plaintiffs contend, be forced to the conclusion that the trial court held that the intervention of the drought years of 1934 and 1939 prevented a forfeiture by interrupting the five year period of nonuse of available water. This subject has been treated at some length in the briefs of counsel. Appellants, the plaintiffs, take the position that

the dry years should not be counted at all. That is, in the nine years from 1932 to 1940 there were only two years when no water was available for storage. During the other seven years water was available in excess of 950 acre feet, yet only 950 acre feet were stored. Plaintiffs contend that since there are seven years, not counting the dry years when Kents Lake did not store available water in excess of 950 acre feet, Kents Lake should not be saved from the consequences of its own neglect by the intervention of a dry year. However, in lieu of the other evidence and findings we do not deem it necessary to determine this question.

The evidence shows that in 1937, an abnormally wet year, the Kents Lake stockholders used over 1,660 acre feet by storing 950 acre feet and diverting over 710 acre feet directly from Beaver River. The trial court found that this direct flow diversion "probably," together with the 950 acre feet stored, equalled 1,660 acre feet and that all the water was beneficially used. This finding of the court must have been based primarily on the testimony of Mr. Boyter, who was called at various times by both parties. He was water commissioner in charge of the distribution of water under the Beaver River System. In 1937 at the direction of the State Engineer and in order to prevent flood conditions he diverted to the stockholders of Kents Lake from the Beaver River water in excess of their direct flow rights. In his opinion the excess water so used, together with the 950 acre feet stored, would total 1,660 acre feet. This evidence is not contradicted, every one on the entire system used excess water that year.

We therefore have this situation. In 1932, 1933, 1935, and 1936 Kents Lake neglected to use all the available water either by storage or by direct flow diversions. In 1937 it stored 950 acre feet and used 710 acre feet by direct diversions from the River. Since 1937 there has not been sufficient time up to the filing of this suit for another five year period of nonuse to run. Since no water was available in 1934, it must be disregarded. Hence, there were only four years betwen 1932 and 1937 when

water was available and not used. In 1937 all the 1,660 acre feet was used, thus cutting short at 4 years the period of nonuse. The plaintiffs concede that the beneficial use by the appropriator during at least one out of every five years is sufficient to protect his right against the operation of the forfeiture statute. This leads us to the inevitable conclusion that there has been no forfeiture of any rights by Kents Lake.

The remaining questions raised by the plaintiffs will be discussed in connection with the objections to the approval of the application to appropriate 1,193 acre feet of water from Beaver River. The facts relating to this application follow:

There is some conflict in the evidence as to whether there is, during normal years, any unappropriated water in the Beaver River, but during abnormally wet years it is admitted that there is some unappropriated water during high water seasons. The trial court so found. The cost of building an impounding dam at Three Creeks would be considerably less per acre foot of storage space than would the enlargement of the storage facilities on the South Fork. The plaintiff power company has hydro-electric power plants below the proposed Three Creeks site. There is evidence that the proposed reservoir will collect silt and debris during high water season, and unless facilities are constructed to retain the silt and debris, it will be later sluiced out into the stream, thus causing heavier wear and other damage to the plaintiff's equipment.

The plaintiffs contend (1) that since there normally is no unappropriated water in Beaver River, the State Engineer should not have approved the application for it puts a junior appropriator at the head of the stream where he might unlawfully interfere with senior vested rights to the water; and (2) that if either the proposed transfer or the application for appropriation is approved, the decree should contain a provision requiring Kents Lake to so construct the reservoir that additional debris will not be emptied into the stream to the damage of the plaintiff power company.

We stated in *Little Cottonwood Water Co.* v. *Kimball,* 76 Utah 243, 289 P. 116, 118, that the State Engineer should approve an application to appropriate water unless

"it clearly appears that there is no unappropriated water in the proposed source. * * * If the question is fairly doubtful and there is reasonable probability that a portion of the waters are not necessary to supply existing rights the engineer should have the power to approve the application and afford the applicant the opportunity for an orderly recourse to the courts, who have the facilities and powers to dispose of the matter definitely and satisfactorily."

It would appear that under this rule the Engineer correctly granted the application to appropriate the 1,193 acre feet from Beaver River. In a trial de novo in the district court, the court found on the conflicting evidence that there was unappropriated water during certain high water seasons and that the applicant could put the water to a beneficial use. Therefore, unless it appears that the approval of the application will injure vested rights of prior appropriators, the application to appropriate should be approved. See 100-3-8, Utah Code Annotated 1943; *Little Cottonwood Water Co.* v. *Kimball,* supra.

This appropriation, if approved, would be junior to all existing rights or prior appropriators. Sec. 100-3-1, Utah Code Annotated 1943; *Eardley* v. *Terry,* 94 Utah 367, 77 P. 2d 362. If no water in excess of that necessary to supply existing rights is available in any one year, the new appropriator would get none. As far as plaintiff Rocky Ford is concerned, the approval of the application could not deprive it of any rights. At most, it places Kents Lake in a position where it can unlawfully interfere with the plaintiff's rights unless plaintiff exercises diligence to prevent the same. This is not an action to determine the relative rights of the parties nor to vest the right to appropriate in the applicant. It is limited to a determination of whether there is probable reason to believe that there is unappropriated water and whether

the approval of the application will injure the vested rights of the protestants, the plaintiffs. *Little Cottonwood Water Co.* v. *Kimball,* supra; *Eardley* v. *Terry,* supra. Since the plaintiffs' rights in regard to this application are prior to the rights of Kents Lake, they could seek proper redress by a suit for damages or, in a proper case, for injunctive relief if Kents Lake unlawfully interfered with their rights. In the light of our policy of encouraging the development of water rights and the putting of water to a beneficial use, we should not deny this application merely because it puts Kents Lake in a position, as the upstream junior appropriator, where it might, when sufficient water was not available for all concerned, interfere with the plaintiffs' rights.

The power company is in somewhat the same position. It contends that it will suffer substantial damage to its equipment unless the proposed reservoir is so constructed that it will not empty silt and debris into the stream at times when the stream would otherwise be free from such foreign mater, i.e., during low water period. It does not appear what type of dam Kents Lake proposes to build. It may contemplate a type of construction which will filter the water or otherwise retain the debris. As pointed out by the California Supreme Court in *Wright* v. *Best,* 19 Cal. 2d 368, 121 P. 2d 702, 709,

"an appropriator of waters of a stream, as against upper owners with inferior rights of user, is entitled to have the water at his point of diversion preserved in its natural state of purity, and any use which corrupts the water so as to essentially impair its usefulness for the purposes to which he originally devoted it, is an invasion of his rights. Any material deterioration of the quality of the stream by subsequent appropriators or others without superior rights entitles him to both injunctive and legal relief."

The court in addition to several other California cases, cited Wiel, Water Rights, 3rd Ed., Vol. 1, pp. 561-565. See also *Hammond* v. *Johnson,* 94 Utah 20, 66 P. 2d 894. However, it would seem that the doctrine that the senior appropriator is entitled to water of the same quality should be

limited, as the California court has limited it, to apply only to deteriorations of quality which would materially impair the use to which he was putting the water. Since Kents Lake has been forewarned that the plaintiff will not tolerate a deterioration of quality which will injure plaintiff's machinery, this fact will no doubt be taken into account in constructing a dam; and also if suit should be necessary to prevent a flushing down of silt, in the "balancing of the equities" to determine whether the court should allow damages or injunctive relief, this part would be considered. *Smith* v. *Staso Milling Co.*, 2 Cir., 18 F. 2d 736.

We need not determine what the power company's rights would be in any given case if the reservoir as constructed does sluice debris and silt into the stream to the injury of said power company. Suffice it to say that if as a junior appropriator, it does deteriorate the quality of water so that it materially impairs the use to which the power company is putting it, the power company could seek proper redress in the courts at that time for damages or injunctive relief. But without more of a showing of threatened injury or a showing of the type of dam Kents Lake proposes to construct, etc., we will not at this time attempt to supervise or limit the type of construction.

We therefore conclude that Kents Lake has not forfeited any of its 1,660 acre feet decreed right to store water at the South Fork site; that a transfer of 830 acre feet of this right can be made without injury to the plaintiffs if such transfer is so limited that the total amount stored at both places does not exceed the total amount avail- able during the same period at the South Fork location; that the application to appropriate 1,193 acre feet of water was properly approved; that the court correctly refused to supervise or limit the type of dam to be built at Three Creeks; and that the plaintiffs are not foreclosed from future actions for damages or injunctive relief if Kents Lake does interfere with their rights. The decree of the lower court should be amended to conform with this

opinion as to limitations on the total amount of water which could be stored at the two sites. It also should correct finding No. 4 to the effect that Beaver River rises in the Wasatch Range of Mountains and flows in an Easterly direction to conform with the fact agreed upon by all parties that it arises in the Tushar mountains and flows in a westerly direction.

Appellant, Rocky Ford Irrigation Company, to recover one-third of its costs.

LARSON, McDONOUGH, and WADE, JJ., concur.

MOFFAT, Justice (concurring in part, dissenting in part).

I cannot concur in the conclusion reached that Kents Lake Reservoir Company had not forfeited any of the 1,660 acre feet decreed to it to be stored in the South Fork of Beaver River under the 1931 decree. That decree had stood for eleven years, with a priority date of 1890. The limiting dates of storage are between April 1st and June 30th of each year, with the further limitation that no storage could be made when the flow of water of Beaver River at the government gauging station at the mouth of Beaver Canyon was below 164 second feet.

The Rocky Ford Irrigation Company had a right to store 25,447 acre feet betwen October 1st of each year and June 30th of the following year, and direct diversion rights of 120 second feet and 150 second feet during the periods, respectively, from July 1st to September 30th, with a priority date of 1909, and from March 15th to June 30th, with a priority date of 1907.

At no time since the date of the decree in 1931 had Kents Lake provided a storage capacity for or stored more than 950 acre feet. There were three years of the period when there was no water available for storage. Under Ullrich's testimony there was only one year, 1937, when there was water enough to equal the storage capacity of 950 acre feet.

Under Lofgren's testimony there were six years of the period when the estimated run-off would have exceeded the 950 acre feet. With the lapse of eleven years, the fluctuating quantities of water available, and at the end of the period to make an application for a change of point of diversion and storage from the designated place, evidences an abandonment or forfeiture of any right above the capacity provided. It may have been uncertainty of available storage, or expense in excess of economical cost, or impracticability of increasing the storage capacity at the place designated; but whatever the persuading factors, the fact remains no steps were taken to protect the right above 950 acre feet.

Except as herein indicated, I concur in the conclusions reached by Mr. Chief Justice Wolfe.