**Larry LITTLE, Plaintiff and Appellant,**

**v.**

**GREENE & WEED INVESTMENT, Leon S. Lippincott, Caroline Lippincott, and Dee C. Hansen, State Engineer of the State of Utah, Defendants and Appellees.**

No. 900451.

Supreme Court of Utah.

June 12, 1992.

John W. Anderson, Salt Lake City, for Larry Little.

Keith S. Christensen, Salt Lake City, for Green & Weed Investments.

E.J. Skeen, Salt Lake City, for Leon S. and Caroline Lippincott.

STEWART, Justice.

This case is here on certiorari to the Utah Court of Appeals which held that a water right will not pass as an appurtenance to land conveyed by deed under Utah Code Ann. § 73–1–11 until the State Engineer issues a certificate of appropriation. We affirm this holding, but reverse on other grounds and remand.

The facts are not in dispute. Lester and Madge Little, husband and wife, owned a tract of land in the Johnson Canyon area of Kanab, Utah. On April 12, 1955, Lester filed an application to appropriate water with the Utah State Engineer's Office. The application, No. 26838 (85–33), requested 10 second feet of water out of two wells for use on 160 acres. Because it was not economically feasible to develop the full water right, Lester filed an application on November 30, 1967, to segregate .92 second feet of water from the original 10 second feet. The application to segregate,

No. 26838a (85–102), matured into the water right at issue in this case. On December 19, 1967, Lester filed proof of appropriation with the State Engineer, certifying that the diversion facilities were complete and that the water had been put to use irrigating 83.3 acres during the 1967 season. On October 21, 1969, the State Engineer issued certificate of appropriation No. 8497 on the application to segregate.

On January 16, 1968, prior to the issuance of the certificate, the Littles executed and delivered a warranty deed which conveyed to each of their five children as tenants in common an undivided one-fifth interest in land comprising about 490 acres.[1] The land conveyed included 80.1 of the 83.3 acres described in the proof of appropriation.[2] The deed conveyed the land "[t]ogether with all improvements and appurtenances appertaining thereto."

On August 3, 1968, the five children, John Kenyon Little, Larry Lester Little, Caroline Little Lippincott, Lorna Little Cottam, and Clara Bess Little Grams, agreed in a handwritten document to distribute the land and grant portions to John individually, Larry and Caroline together, and Lorna and Clara together. Lorna and Clara's portion contained one of the two wells described in the application to segregate ("Well No. 1").

By a deed entitled "Quit Claim Deed—Water," notarized November 17, 1969, the parents, Lester and Madge Little, conveyed Well No. 1 in application No. 26838 (85–33) to Lorna and Clara. Because of an erroneous description of the diversion point of the well, however, Lester and Madge executed a second quitclaim deed correcting the description. The second deed was not dated.

On November 25, 1969, the State Engineer issued an amended certificate of appropriation to properly state that the number of the application to segregate was 26838a, not 26828a, and to correct the description of 1.3 acres.

On or about December 30, 1969, the five children executed and delivered to each other warranty deeds dividing the land as agreed on August 3, 1968, except that Larry and Caroline received separate parcels. The deeds conveyed the land with all appurtenances and did not reserve water rights.

On April 19, 1971, Lester transferred to Lorna and Clara aluminum pipe, adaptors, and other equipment necessary for the use of Well No. 1. The bill of sale included the statement "which well and water right were heretofore conveyed to the parties of the second part [Lorna and Clara] by the party of the first part [Lester]." In a signed and notarized document dated March 19, 1971, and filed in the State Engineer's Office on May 11, 1971, Larry declared, "It was my understanding at the time my siblings and I divided the property we held in common, that the original well # 1 of application # 26838 (85–33), together with the existing pump, header pipe, sprinkler pipes and engine were to go to Lorna Cottom and Clara Bess Grams."

In June 1972, Larry conveyed approximately 10.7 acres to Lorna and Clara by warranty deed, together with appurtenances and without reserving water rights. On September 1, 1972, Lorna and Clara conveyed each of their parcels of land "[t]ogether with any and all water rights" to defendants A.H. Greene and Daniel R. Weed. On October 22, 1975, defendant Caroline Lippincott and plaintiff Larry Little signed an instrument in which they agreed to collectively purchase from Greene and Weed approximately 80 acres of land, each paying one-half the costs and each receiving a ½ interest in the land and water rights. By warranty deed dated December 15, 1977, Greene and Weed conveyed to Leon and Caroline Lippincott a ⅝ interest in the water right established by application 26838a (85–102). On May 16, 1978, the Lippincotts conveyed one-half of their ⅝ interest to Larry Little. In a separate transaction, Greene and Weed conveyed an-

---

**1.** The deed conveyed 520 acres less 32.32 acres that had been sold to the State Road Commission.

**2.** Lester and Madge Little had previously deeded 3.2 of the 83.3 acres to their son John Kenyon Little.

other ¼ interest in the water right to Leon and Caroline Lippincott.

On May 17, 1982, Greene and Weed, doing business as Greene and Weed Investments, filed an application with the State Engineer to permanently change the point of diversion and nature of use of a portion of the water right evidenced by application to segregate No. 26838a, certificate No. 8497. Larry Little protested the application to change on the ground that Greene and Weed had no interest in the certificate. The State Engineer, however, approved the application, and Larry Little filed an action in the district court to review that decision pursuant to Utah Code Ann. § 73-3-14 (1980). In the same action, Larry also filed to quiet title to the water right.

The trial court heard the quiet title action first and ruled in favor of Greene and Weed Investments and Leon and Caroline Lippincott.[3] The court found that Lester and Madge Little intended to convey to Lorna and Clara, by the two quitclaim deeds conveying Well No. 1, the water right evidenced by application No. 26838a (85-102). The court also found that Greene and Weed became the sole owners of the interest in the water right by the conveyance from Lorna and Clara and by a quitclaim conveyance from East Canyon Irrigation Co.[4] On the basis of the subsequent conveyances by Greene and Weed and the Lippincotts, the trial court concluded that the respective titles to the water right were held as follows:

| | |
|---|---|
| Larry L. Little | 5/16 |
| Leon and Caroline Lippincott | 9/16 |
| Greene and Weed Investments | 2/16 |

In its conclusions of law, the trial court held, "The water right involved in this case was initiated under statutory authority and did not pass as an appurtenance to land conveyed before it was vested by the issuance of a certificate of appropriation by the State Engineer." The correctness of this conclusion poses the primary issue for review.

Larry Little argued to the Court of Appeals that the water right became appurtenant to the land when proof of appropriation was made and that Larry therefore became the owner of a portion of the water right on January 16, 1968, when Lester and Madge Little conveyed an undivided ⅕ interest in the land to each of their five children, "[t]ogether with all ... appurtenances appertaining thereto." The Court of Appeals disagreed. It held that water becomes appurtenant to land only after (1) the water is beneficially applied to a specific tract of land and (2) all the statutory steps for appropriation are completed. *Little v. Greene & Weed Investments*, 796 P.2d 718, 720 (Utah Ct.App.1990). Until the State Engineer issues the certificate of appropriation, the water right is inchoate, and only upon issuance of the certificate does the water right become appurtenant to the land. *Id.* at 720-21.

In this Court, Larry renews his argument that water rights become appurtenant upon proof of appropriation. He contends that it is bad policy and creates ambiguities as to the ownership of water rights to make the deciding factor the issuance of the certificate, because it may take the State Engineer years after proof of appropriation to issue the certificate while, during that time, the water is put to beneficial use on the land.

The critical issue is one of statutory construction. Utah Code Ann. § 73-1-11 (1989) provides in part, "A right to the use of water appurtenant to land shall pass to the grantee of such land ... provided, that any such right ... may be reserved by the grantor in any such conveyance by making such reservation in express terms in such conveyance, or it may be separately conveyed." The key issue to be resolved is, when does a "right to the use of water"

---

3. The trial court's decree in the quiet title action was certified as a final judgment pursuant to Rule 54(b) of the Utah Rules of Civil Procedure.

4. John Little and his wife Anna conveyed to East Canyon Irrigation Co., by quitclaim deed dated August 10, 1970, the right to irrigate 11.2 acres of land and to water 110 head of cattle from the water right evidenced by application No. 26383a (85-102). East Canyon then conveyed "[a]ll our rights" in the water right to Greene and Weed by quitclaim deed dated December 18, 1974.

become "appurtenant to land" so that it passes to the grantee of the land under § 73-1-11, unless expressly reserved?

Since 1888, the right to use water in Utah has been governed by statute. *See* Compiled Laws of Utah 1888, vol. 2, ch. 2. Early statutes provided that water rights became vested upon appropriation to a beneficial use. *Id.* § 2870; Revised Statutes of Utah 1898, tit. 33, §§ 1261-62; *Bishop v. Duck Creek Irrigation Co.*, 121 Utah 290, 293, 241 P.2d 162, 164 (Utah 1952). In 1903, the Legislature codified the application and certification procedures for the acquisition of water rights, but preserved the rights acquired through earlier appropriations. *See* 1903 Utah Laws ch. 100 §§ 35-45, 72; Compiled Laws of Utah 1907 tit. 40. The Legislature also for the first time declared all natural waters of the state to be public property. 1903 Utah Laws ch. 100, § 47; Utah Code Ann. § 73-1-1 (1989). As a result, individuals could no longer acquire ownership interests in water, but only the right to put the water to certain uses. *J.J.N.P. Co. v. State*, 655 P.2d 1133, 1136 (Utah 1982). The laws enacted in 1903 remain substantially intact to the present day.

The Utah Code requires the completion of certain steps before a right to use water—a water right—comes into existence. First, an application to appropriate the water must be filed with the State Engineer. Utah Code Ann. § 73-3-1 (1989). The application must include certain information such as the nature of the use, the quantity of water to be used, and the source of the water. § 73-3-2. The mere filing of an application does not give the applicant a right to use the water; whatever right or interest exists at that point is inchoate. *See Duchesne County v. Humpherys*, 106 Utah 332, 335, 148 P.2d 338, 339 (1944). The State Engineer must then approve the application by determining whether (1) there is unappropriated water in the proposed source; (2) the proposed use will not impair existing rights or interfere with the more beneficial use of the water; (3) the proposed plan is both physically and economically feasible; (4) the applicant has the financial ability to complete the works; and

(5) the application is filed in good faith and not for purposes of speculation or monopoly. § 73-3-8. Approval of an application is only a preliminary step which gives the applicant the authority to proceed and perfect, if possible, the proposed appropriation by actual diversion and application of the water to a beneficial use. *See Rocky Ford Irrigation Co. v. Kents Lake Reservoir Co.*, 104 Utah 202, 212-13, 135 P.2d 108, 113 (1943).

Next, the applicant must file proof of appropriation, describing the works constructed, the quantity of water appropriated, and the method for applying the water to beneficial use. § 73-3-16. Proof of appropriation must be sworn to by the applicant and accompanied by maps and drawings showing, among other things, the location of the completed works. *Id.* Failure to file proof of appropriation causes the application to lapse. § 73-3-17; *Mosby Irrigation Co. v. Criddle*, 11 Utah 2d 41, 46, 354 P.2d 848, 852 (1960).

Finally, if satisfied that appropriation has been made in accordance with the application and that the water has been put to a beneficial use, the State Engineer will issue a certificate of appropriation. § 73-3-17. The certificate sets forth the name of the user, the quantity of water, the time the water is to be used during the year, the source of the water, and the date of appropriation. *Id.* The certificate constitutes prima facie evidence of the owner's right to use the water in the quantity and for the purpose described, subject to prior rights. *Id.; Lake Shore Duck Club v. Lake View Duck Club*, 50 Utah 76, 81, 166 P. 309, 311 (1917). Until the certificate is issued, any right to use the water remains inchoate. *See Mosby Irrigation Co. v. Criddle*, 11 Utah 2d 41, 46, 354 P.2d 848, 852 (1960).

Under certain conditions, the State Engineer must file an action in a district court to determine the water rights of competing users. §§ 73-4-1 to -24. Private suits, such as the instant action to quiet title, may also be brought to adjudicate water rights. *See Smith v. District Court*, 69 Utah 493, 501, 256 P. 539, 542 (1927); *see,*

*e.g., Lawson v. McBride,* 71 Utah 239, 264 P. 727 (1928).

In sum, it is through compliance with the above statutory procedures that the right to use water is vested, except for the existence of diligence rights established by beneficial use prior to 1903.

The issue before us is at what point in the process of its perfection a water right becomes appurtenant to land so that it passes with the transfer of the land under § 73–1–11. In other words, can a right to use water become appurtenant to land before it is vested by the issuance of a certificate of appropriation?

This precise issue was decided in *Duchesne County v. Humpherys,* 106 Utah 332, 148 P.2d 338 (1944). There, Duchesne County became the owner by tax sale of all but a minor fraction of land described in an application to appropriate water. At the time of the transfer, proof of construction of the works to convey the water and proof of placement of the water to a beneficial use had not been filed with the State Engineer. Nevertheless, Duchesne County asserted that it became the owner of the water rights evidenced by the application because the rights were appurtenant to the land. Although not cited, Duchesne County obviously relied on Utah Code Ann. § 100–1–11 (1943), which contains the exact language of § 73–1–11.

This Court disagreed. It held that the filing of an application does not give the applicant a vested right to the use of the water sought to be appropriated, but only gives a right to complete the appropriation and put the water to a beneficial use in compliance with the act. Noting the lack of proof of completion of the water works and of beneficial use under the application, the Court held, "No vested water rights were ever acquired and therefore could not have passed to the county as appurtenances to land which it obtained by its tax sales." *Humpherys,* 106 Utah at 335, 148 P.2d at 339. Thus, the Court squarely held that the right to use water must be vested in accordance with the Water and Irrigation Act before it can pass as an appurtenance to land. It is inconsequential that the Court failed to cite the Code section and that the transfer of land was a result of a tax sale.

The language of the Code supports that holding. Section 73–1–11 provides that unless expressly reserved, "[a] right to the use of water appurtenant to land shall pass to the grantee of such land." In using the term "right to the use of water appurtenant," the Legislature was referring to water rights acquired via the Water and Irrigation Act that are appurtenant to land, that is, the "right" is distinct from its status as an appurtenancy. Under the Act, the right to use water may be acquired "only as provided in this title." Utah Code Ann. § 73–3–1 (1989). As discussed above, until the certificate of appropriation is issued, an applicant's right is inchoate. In short, the Legislature intended that a right to use water be perfected before it could become appurtenant.

The section immediately preceding § 73–1–11 also supports the view that to be appurtenant, a water right must be perfected under the Act. Section 73–1–10 provides for the conveyance of vested water rights:

> Water rights, whether evidenced by decrees, *by certificates of appropriation,* by diligence claims to the use of surface or underground water or by water users' claims filed in general determination proceedings, shall be transferred by deed in substantially the same manner as real estate, except when they are represented by shares of stock in a corporation, in which case water shall not be deemed appurtenant to the land.

(Emphasis added.) By specifying water rights evidenced by "certificates of appropriation," the Legislature implicitly excluded claimed rights under applications in which a certificate has not yet issued from those rights that can be transferred by deed. Thus, read together with § 73–1–11, section 73–1–10 provides that water rights evidenced by decrees, certificates of appropriation, diligence rights, and claims filed in general determination proceedings are transferred in a deed as appurtenant to land unless expressly reserved.

Finally, practical reasons support this holding. It is not until the certification stage that the State Engineer reviews an application together with the proof of appropriation to determine whether the water is actually put to a beneficial use—the linchpin of water rights. *See* Utah Code Ann. §§ 73–3–1, –5 (1989). Also, because the extent of the water use claimed in the proof of appropriation and the extent of use ultimately certified by the State Engineer may differ, a grantee of land may not receive the entire water use believed to be appurtenant and presumably purchased at the time of the transfer, if mere proof of appropriation were sufficient to make water appurtenant to land. Moreover, the purpose of the Act could be defeated if the appropriated water became a vested right simply because of its transfer with land by deed.

Although some difficulties may be created by the fact that several months or even years may pass between proof of appropriation and the issuance of the certificate, an applicant can contact the State Engineer's Office in an effort to speed up the process. Also, an inchoate right under an unperfected application can be transferred in a separate transaction pursuant to § 73–3–18, which provides in part: "Prior to issuance of certificate of appropriation, rights claimed under applications for the appropriation of water may be transferred or assigned in instruments in writing."

Larry Little argues at length that it is the State Engineer's policy to transfer title to water as appurtenant to land that has been conveyed if the deed includes all appurtenances and does not reserve the water and an affirmative showing is made that the water has actually been put to a beneficial use. He offers the testimony of an employee of the Engineer's Office in support of his argument. Neither the trial court nor the Court of Appeals expressly addressed this issue.

To the extent such a policy is contrary to the law, it is not controlling. The issue before the Court is a question of law, and the Engineer's policy, although entitled to some weight, does not control the resolu-

tion of that issue, especially given the rather clear statutory provisions and our prior case law.

■ Our holding that water rights are not appurtenant to land for purposes of § 73–1–11 until the certificate of appropriation is issued does not end the matter. The extent of appurtenancy must also be addressed. Section 73–1–11 provides in part that the right to use water appurtenant "shall pass to the grantee of any parcel of land on which such right was exercised next preceding the time of the execution of any conveyance thereof...." In *Stephens v. Burton,* 546 P.2d 240, 242 (Utah 1976), this Court, interpreting § 73–1–11, held that the right to use water that is appurtenant to a tract of land conveyed "is the amount of water which was beneficially used thereon before and at the time of the sale." Thus, unless expressly reserved, a vested water right is considered appurtenant to the land conveyed only to the extent that it is used to the land's benefit at the time of the conveyance.

After concluding that the water right at issue was not transferred as an appurtenance under the warranty deed from Lester and Madge Little to their children because the certificate of appropriation had not yet issued, the Court of Appeals affirmed the trial court's conclusion that Lester and Madge Little intended to transfer the entire water right by the two water quitclaim deeds to Lorna and Clara. *See Little v. Greene & Weed Investments,* 796 P.2d at 721 n. 5. While the Court of Appeals was correct in this ruling, it should not have ended its analysis there. A further issue argued and briefed to this Court warrants discussion because its resolution will have an effect on the proceedings on remand.

■ The trial court found that Greene and Weed became the sole owners of the interest in the water right by the September 1, 1972 conveyance from Lorna and Clara and by the December 18, 1974 conveyance from East Canyon Irrigation Co. This finding lacks the evidence necessary to support it.

The water right at issue was granted by the Engineer's Office to benefit 83.3 acres of land. Lester presented proof that the water was being so used on December 19, 1967. Thus, Lorna and Clara became the owners of the vested water right appurtenant to 83.3 acres of land on November 17, 1969, by the quitclaim deeds from Lester and Madge Little.[5] At the end of December 1969, however, the Little siblings signed warranty deeds to each other dividing the land conveyed to them by their parents. The deeds granted the land with all appurtenances and did not reserve water. Portions of the 83.3 acres benefitted by the water right were deeded to John and Larry. Pursuant to § 73–1–11, therefore, Lorna and Clara conveyed portions of the water right to John and Larry by the December 1969 warranty deeds. This transfer occurred before Lorna and Clara conveyed their interest to Greene and Weed on September 1, 1972. Accordingly, Greene and Weed could not have obtained the entire water right from Lorna and Clara and East Canyon Irrigation Co.

Larry asserts that the December 1969 deeds conveyed 38.1 of the 83.3 acres and the accompanying portions of the water right to Larry and John, with Larry receiving 30.1 acres and John receiving 8.0 acres.[6] Although these figures appear accurate given the descriptions in the December 1969 deeds, we cannot verify with certainty the parties' respective interests in the water right due to limited information in the record. For example, the deed from Lorna and Clara to Greene and Weed dated September 1, 1972, conveyed certain land without reserving water, including the following parcel:

> The North half of the Southwest quarter of Section 25, Township 43 South, Range

5 West, Salt Lake Base and Meridian. LESS, that sold to the State Road Commission of Utah and LESS that part lying East of Highway U–136.

Based on the section map that accompanied the water right application, it appears that some portion of this land may be covered by the water right, depending on the location of Highway U–136. That highway, however, is not denoted on the map. Thus, it is unclear how much, if any, of the water right was transferred by the conveyance. The precise division of the water right as a result of this and other subsequent conveyances, therefore, must be resolved on remand.

The decision of the Court of Appeals is reversed, and the case remanded to the trial court for further proceedings.

HALL, C.J., HOWE, Associate C.J., and DURHAM and ZIMMERMAN, JJ., concur.

---

5. At trial, the parties stipulated to the fact that the water right had been placed to beneficial use on the 83.3 acres during the 1968–69 irrigation season. We assume for the purposes of this discussion that at the time of the November 1969 transfer, the water right was being used to benefit the 83.3 acres and thus was appurtenant thereto.

6. Larry also asserts that Lorna and Clara received 41.3 acres and thus 41.3/83.3 of the water right. However, even assuming Lorna and Clara received only 41.3 of the 83.3 acres from the December 1969 deeds, they previously owned the water right benefitting all 83.3 acres. Therefore, in conveying 38.1 acres to Larry and John, they retained 45.2/83.3 of the water right. We also note that because John owned only 8/83.3 of the water right, East Canyon could have only received the right to irrigate 8 acres from him and not the right to irrigate 11.2 acres as the quitclaim deed to East Canyon states.