In the matter of the general determination of rights to the use of all water, both surface and underground, within the drainage area of Bear River and all its tributaries in Utah.

Richard M. ESKELSEN and Virginia E. Eskelsen, Plaintiffs and Appellants,

v.

TOWN OF PERRY, a municipal corporation, Defendant and Appellee.

LaNez Norman, A Party in Interest and Appellant.

No. 900119.

Supreme Court of Utah.

Sept. 16, 1991.

Rehearing Denied Nov. 12, 1991.

E.J. Skeen, Salt Lake City, for plaintiffs and appellants.

Jeff R. Thorne, Brigham City, for defendant and appellee.

DURHAM, Justice:

This is an interlocutory appeal from a decree entered in a proceeding under section 73–4–24 of the Utah Code. Under the terms of that section, the trial court's interlocutory decree will control the rights of the parties in and to the water involved until a final decree is entered in the ongoing general adjudication of water rights on the Bear River in northern Utah.

This case presents us with a dispute between appellants Richard M. and Virginia E. Eskelsen (the Eskelsens) and LaNez Norman, and appellee Town of Perry (the Town). Each party claims an interest in water having its source in a "spring area" located on land owned by the Town. The trial court found that any water right held by the Eskelsens is subservient to the Town's right and that Norman does not have any water right in the spring area. On appeal, we must consider two separate sets of claims by the Eskelsens and/or Norman: (1) water rights claimed pursuant to a 1957 notice of diligence claim filed by Ruby Davis, their predecessor in interest, and (2) water rights claimed pursuant to two applications to appropriate filed with the state engineer in 1974 and 1983. In determining the validity of the latter applications, we must address, first, whether there is competent evidence to support the trial court's finding of pre–1903[1] water use by the Town's predecessors in interest, and second, whether the Town's leasing of part of its water right between 1964 and 1984 resulted in a statutory forfeiture. We will discuss the evidence in conjunction with the relevant legal principles.

We review the factual findings of the trial court under a clearly-erroneous standard. Utah R.Civ.P. 52(a). The trial court's legal determinations are given no deference but are reviewed for correctness. *See Standard Fed. Savings & Loan Assoc. v. Kirkbride*, 161 Utah Adv.Rep. 26, 27, —— P.2d ——, —— (1991), and cases cited therein.

## I. DAVIS'S 1957 NOTICE OF DILIGENCE CLAIM

■ Through a series of land purchases beginning in 1917, the Town acquired approximately 70 acres of land and expressly obtained all water rights belonging to the grantors.[2] In 1933, the Town conveyed part of its 70–acre tract to Maud Davenport. The Davenport deed did not mention water rights, neither expressly reserving nor conveying them. The Davenport property was eventually conveyed to Ruby Davis. In 1957, Davis filed a notice with the state engineer claiming a diligence use prior to 1903 in 0.0267 second foot (12 gallons per minute) of water. The Eskelsens and Norman trace the title of their respective parcels of land to the Davenport and Davis deeds. They each claim a half interest in the water right described in Davis's 1957 notice of diligence claim. The trial court found that the Eskelsens and Norman have no valid water rights by virtue of the notice because the Town was constitutionally barred from conveying water rights to Davenport under the 1933 deed.

---

1. In 1903, the Utah legislature enacted a statute providing that the filing of an application to appropriate with the state engineer is the *exclusive* method for a prospective water user to establish a claim to water rights. *See generally* 1903 Utah Laws ch. 100, § 35 (presently codified at Utah Code Ann. §§ 73–3–1 to –2); *Deseret Live Stock Co. v. Hooppiania,* 66 Utah 25, 239 P. 479, 483 (1925). Prior to 1903, water could be appropriated merely by diverting it from its natural channel and putting it to beneficial use. *Bishop v. Duck Creek Irr. Co.,* 121 Utah 290, 241 P.2d 162, 164 (1952); *see also Wrathall v. Johnson,* 86 Utah 50, 40 P.2d 755, 769 (1935) (describing the early appropriation procedure).

The 1903 statute preserved existing diligence claims by permitting the filing of a notice with the state engineer. 1903 Utah Laws ch. 100, § 72 (presently incorporated in substance in Utah Code Ann. § 73–5–13).

2. A 1917 deed to the Town from the Stokeses conveyed all water rights "save and except a ¼ interest in one spring which belongs to John Call and a small spring arising upon James S. Stokes property." In 1921, James S. Stokes conveyed 2.56 acres of land to the Town, together with all appurtenant or incident water rights. Then in 1929, John Call and his wife conveyed 6.64 acres of land to the Town, together with all water rights.

Article XI, section 6 of the Utah Constitution bars "any voluntary transfer, directly or indirectly, of water rights" belonging to a municipal corporation.[3] *Nephi City v. Hansen*, 779 P.2d 673, 675 (Utah 1989). Despite this provision, the Eskelsens and Norman claim that under the 1933 deed to Maud Davenport, the Town conveyed the water rights appurtenant to the property as a matter of law because section 73-1-11 of the Utah Code provides that, unless expressly reserved by the grantor, a water right passes at the time of the conveyance of the land upon which it is used. Had the Davenport deed been between private parties, the appurtenant water rights would have passed to Davenport under that statutory provision, even though the deed did not expressly mention water rights. Because the grantor was a municipality, however, the prohibition contained in article XI, section 6 supersedes the language of the statute. The fact that there was a municipal corporation in the chain of title precludes any claim by a subsequent owner to water rights stemming from a transfer of title out of the municipality. A transferee cannot receive any more water rights than the transferor can convey. The trial court correctly found that the Eskelsens and Norman can claim no interest in water rights having their origin in Davis's 1957 notice of diligence claim. As successors to Davenport, the Eskelsens and Norman have no diligence claim because any water rights remained in the Town.

## II. THE STATUS OF THE ESKELSENS' 1974 AND 1983 APPLICATIONS

◼ Given the fact that no water rights were transferred by the 1933 deed from the Town to Davenport, the Eskelsens' claim to pre-1933 water rights cannot prevail. Any claim to water rights by the Eskelsens, therefore, must depend upon an application to appropriate filed with the state engineer after 1933 pursuant to sections 73-3-1 and -2 of the Utah Code.[4] Two such applications were in fact filed, one for 0.015 second foot (6.5 gallons per minute) of water with a priority date of April 8, 1974, and another for 0.1 second foot (45 gallons per minute) of water with a priority date of October 14, 1983.

The trial court's decree does not mention the 1974 application. On appeal, the Eskelsens[5] allege that this omission is "obviously error." The record, however, indicates that the 1974 application may have been filed merely as a restatement of one of the half interests in Davis's 1957 diligence claim and not as a separate or new claim at all. The testimony of the person who filed the application (Neil Dwayne Norman) indicates that his purpose was to transfer his interest in the Davis diligence claim from one home to another. He stated that he was not seeking to appropriate an additional water right. In terms of quantity, this explanation makes sense; half of the diligence claim would be 6 gallons of water per minute, which is an amount similar to that stated in the 1974 application.

Although it appears that the trial court's omission of the 1974 application from its decree was probably based on a finding that it was not a separate claim, the court never made a formal finding to that effect. We therefore remand this issue for the trial court to make a specific finding as to the status of the 1974 application. If the court concludes that the application was merely a restatement of the diligence

---

**3.** In its entirety, article XI, section 6 of the Utah Constitution states:

No municipal corporation, shall directly or indirectly, lease, sell, alien or dispose of any waterworks, water rights, or sources of water supply now, or hereafter to be owned or controlled by it; but all such waterworks, water rights and sources of water supply now owned or hereafter to be acquired by any municipal corporation, shall be preserved, maintained and operated by it for supplying its inhabitants with water at reasonable charges: Provided, That nothing herein contained shall be construed to prevent any such municipal corporation from exchanging water rights, or sources of water supply, for other water rights or sources of water supply of equal value, and to be devoted in like manner to the public supply of its inhabitants.

**4.** *See supra* note 1.

**5.** Although not filed by them, the 1974 application was subsequently assigned to the Eskelsens.

claim, then pursuant to the foregoing discussion, the Eskelsens hold no rights under that application. If, on the other hand, the court concludes that the 1974 application is in fact a separate and new claim, then the priority of the Eskelsens' rights thereunder should be determined in the same manner as their rights under the 1983 application.

On October 1, 1983, the Eskelsens purchased their interest in the subject land. Within two weeks, they filed an application with the state engineer to appropriate 0.1 second foot (45 gallons per minute) of water. At that time, the Town was already in the process of making improvements to its collection system. The Eskelsens had knowledge of the improvements and the fact that the Town was claiming water rights in the spring area. The state engineer approved the Eskelsens' application subject to the Town's prior rights.[6] The trial court found that the Eskelsens' 1983 application is valid but that the right secured thereby is subject to the Town's claim and the conditions of the state engineer's approval.

The trial court's finding that the Eskelsens have a valid water right under their 1983 application is correct. Moreover, the Eskelsens may have a water right under the 1974 application, as discussed earlier. The priority of *any* water right held by the Eskelsens, however, is subject to the rights of any senior appropriators under section 73–3–21 of the Utah Code. The trial court

held that the Town holds such a senior water right in ⅓ second foot. The Eskelsens argue that the Town has failed to establish water use by its predecessors in interest before 1903 and that even if the evidence does support such a use, the Town forfeited part of its right by leasing water in violation of the Utah Constitution. We address each of these arguments in turn.

## A. Pre–1903 Use of the Town's Water Right

■ Before the Town acquired the subject property, its predecessors in interest filed no notice of new or existing water rights with the state engineer. The Town itself filed no notice with that office until January 1986, when it filed a "Statement of Water User's Claim" asserting a priority date of 1897. The Town's 1986 statement was not an application to appropriate a new water right pursuant to sections 73–3–1 and –2 of the Utah Code. Nor was it a notice of a pre–1903 diligence claim pursuant to section 73–5–13. The 1986 statement was, rather, filed pursuant to section 73–4–5 as a part of the general adjudication from which this appeal is taken.[7] Because neither the Town nor its predecessors ever filed a statutory application to appropriate with the state engineer, whatever water right the Town has must necessarily rest upon appropriation by beneficial use before 1903.[8]

6. The state engineer's memorandum decision dated April 27, 1984, specifically states:
The Division of Water Rights is presently working in the area in an effort to determine the extent of the rights of Perry City which will be evidenced in Water User's Claim No. 29–2869. The land is entirely owned by the city of Perry and the State Engineer cannot give authority to the applicant to enter upon the city's property. The city is currently in the process of reworking their collection system, but if all of the water is not captured, and if the applicant can work out an agreement with the city to use the water, the State Engineer believes that perhaps the application should be approved.
It is, therefore, ordered and Application No. 29–2973 (A59399) is hereby APPROVED, subject to prior rights and the conditions as stated above.

7. In terms of evidentiary value, such a claim "shall stand in the place of pleadings, and issues

may be made thereon." Utah Code Ann. § 73–4–14. At trial, the Eskelsens and Norman argued that the claim should not be received in evidence because it is "too vague to substantiate any flow of water" and is "an obvious effort … to create some kind of a water right for the Town of Perry." Nonetheless, the trial court received the claim "based on the fact that it's offered to show the [state engineer's] file, not necessarily for the truthfulness of any of the material contained therein." The trial court correctly did not treat the 1986 claim as prima facie evidence of the Town's water right, nor do we do so here.

8. The 1903 statute, *see supra* note 1, does not limit the time within which a user must file a notice of diligence claim. The Town, therefore, would not have lost a pre–1903 right even though neither the Town nor its predecessors ever filed a notice of the claim with the state engineer.

The trial court concluded that the Town has a valid water right in ⅓ second foot dating back to 1897. On appeal, the Eskelsens and Norman argue that there is no competent evidence to support the trial court's finding of pre–1903 water use by the Town's predecessors. Specifically, they assert that there is no testimony in the record as to the use of the spring water before that date in any definite quantity, on any definitely described land, for any specified purpose, or during any specified period of the year. The following is a brief review of the relevant evidence.

In 1897, the Stokes family received title to a 160–acre tract pursuant to a United States patent. The trial court found that the Stokeses developed and diverted water from a "spring area" located on the property. The court states, "While no one testified to all the uses made of the water by the original land owners, the records indicate that irrigation, and domestic, household and stock watering uses were made." The trial court relies on records of the Box Elder County Recorder's Office indicating that "as early as 1892 the Stokes family entered into contracts with Stark Brothers for the purchase of trees for an orchard containing 50 acres."

In addition, the Town introduced two 1983 affidavits. In one, Phillip Douglas Quayle, aged 73, stated he remembered that when he was a young man a family by the name of Stokes owned land on the east bench of the Town of Perry: "I recall that the Stokes Family developed certain springs, made catch basins, and used the water to irrigate crop land, stock, orchards and grapes. I was informed that they began developing their springs prior to the 1900s." In a similar affidavit, Lisle Larsen stated, "[The Stokes family] used this water continuously I am told from prior to 1900 to the time they sold the property to the Town of Perry in 1917." The Eskelsens and Norman argue that these affidavits do not provide probative evidence because of their indefiniteness and their basis in hearsay. We must assume that the trial court took into account the nature of the evidence presented to it and based its con-

clusion on the weight of the evidence as a whole.

As to the quantity of water used prior to 1903, testimony at trial by former employees of the Town indicated that the flow of water in the 1960s was ⅓ of a second foot. Also, a measurement made in July 1984 after improvements were made to the Town's water system indicates that the flow at that time was 130 gallons per minute or 0.29 second foot, and there were indications that at other times the flow was considerably higher. The Eskelsens correctly assert that the evidence as to the Stokeses' use of a given quantity of water from the spring area before 1903 is vague.

In the past, this court has held that vague and indefinite evidence might be insufficient to establish pre–1903 beneficial water use. See Mt. Olivet Cemetery Ass'n v. Salt Lake City, 65 Utah 193, 235 P. 876, 878 (1925); Richfield Cottonwood Irr. Co. v. City of Richfield, 84 Utah 107, 34 P.2d 945, 949 (1934). Those cases, however, were decided many years ago, when it was realistic to expect that more direct and specific evidence about pre–1903 water use should be available. In 1991, however, it would be overly burdensome and unrealistic for us to require a water user to produce unquestionable, overwhelmingly clear evidence of water use. Rigid standards regarding proof of amounts would be virtually insurmountable barriers to old claims. In this case, the Town presented the best information available, and the Eskelsens did not present any evidence in rebuttal. The evidence does establish pre–1903 water use with a reasonable certainty. Balancing the equities and taking into account the amount of time that has passed, we conclude that the showing was sufficient to support the trial court's conclusion that the Town's water right in ⅓ second foot was initiated prior to 1903.

### B. The Town's Leasing of Water Rights and Statutory Forfeiture

In May 1964, tests showed that the water from the spring area was contaminated, and the Town discontinued its general culinary use of the water. The Town

apparently did not resume the use of the water in its culinary water distribution system until 1984, when it constructed a new water collection system. The trial court found, however, that between 1964 and 1984 the Town's water continued to be delivered to two homes for culinary use and that the remainder was leased to one Elmer Matthews for irrigation.

The Eskelsens assert that by discontinuing general culinary use of the spring water, the Town lost a part of its water right under the terms of section 73-1-4 of the Utah Code and article XI, section 6 of the Utah Constitution, leaving that water open for appropriation by another user.[9] The relevant language of the Utah Code provides that a water right not used for five years "ceases" unless the appropriator files an application for an extension of time with the state engineer. Utah Code Ann. § 73-1-4.[10] At the same time, the Utah Constitution provides that a municipal corporation may not "directly or indirectly, *lease*, sell, alien or dispose of any ... water rights." Utah Const. art. XI, § 6 (emphasis added).

In *Nephi City v. Hansen*, 779 P.2d 673 (Utah 1989), this court held that despite the language of article XI, section 6, a municipal corporation can lose its water rights through statutory forfeiture. We held that there is no conflict between article XI, section 6 and section 73-1-4 because the constitution prohibits only the voluntary, intentional disposition of water rights, whereas a forfeiture under section 73-1-4 is invol-

untary. *Id.* at 674-75. Although relevant, *Nephi City* does not address the specific question presented here, i.e., whether a municipal corporation forfeits its water rights under the terms of section 73-1-4 of the Utah Code if it leases, sells, alienates, or disposes of its water rights in contravention of article XI, section 6 of the Utah Constitution.

In this case, there is evidence to support the trial court's factual finding that part of the Town's water right was leased and used for irrigation between 1964 and 1984. The trial court failed, however, to make a legal conclusion regarding the impact of article XI, section 6 on its finding. Under the plain language of that constitutional provision and our decision in *Nephi City*, the Town's leasing of its water rights was prohibited, but we still must determine the effect of the prohibited lease on the Town's long-term interest in the water right.

An appropriative water right depends on beneficial use for its continued validity. *See* Utah Code Ann. § 73-1-3 ("Beneficial use shall be the basis, the measure and the limit of all rights to the use of water in this state."); *Mt. Olivet Cemetery Ass'n v. Salt Lake City*, 65 Utah 193, 235 P. 876, 878 (1925) ("The lapse of 30 years' time during which *no beneficial use of water has been shown* forecloses the claim of the city to the use of [the water]." (emphasis added)). In Utah, "[t]he state is ... vitally interested in seeing that none of the waters are allowed to run to waste or go without being applied to a beneficial use

9. The Eskelsens appear to have no dispute with the trial court's finding of partial culinary use, and there is ample evidence to support the finding. The Eskelsens argue that the Town forfeited only that part of its right that was leased to Matthews.

The question of partial forfeiture is not addressed in our statutes and has never been directly before this court, with regard to a city or any other entity. A 1943 case did, however, intimate—without squarely deciding—that partial forfeiture is possible. *See Rocky Ford Irr. Co. v. Kents Lake Reservoir Co.*, 104 Utah 202, 135 P.2d 108, 112 (1943). As a matter of law, the trial court in this case held that partial forfeiture does not apply in the state of Utah. Such a result would mean that the use of any part of a water right, no matter how small, would preserve the whole. As a matter of pub-

lic policy, it might be prudent to allow partial forfeiture; all of the policy reasons that support forfeiture as a general principle would be furthered by, and hindered without, partial forfeiture. Because we hold that there is no forfeiture in this case, however, we do not reach the question of partial forfeiture.

10. Specifically, section 73-1-4(1)(a) provides:

When an appropriator or his successor in interest abandons or ceases to use water for a period of five years, the right ceases, unless, before the expiration of the five-year period, the appropriator or his successor in interest files a verified application for an extension of time with the state engineer.

No extension was sought by or granted to the Town.

for any great number of years." *Deseret Live Stock Co. v. Hooppiania*, 66 Utah 25, 239 P. 479, 481 (1925). To protect this state interest, the legislature has provided that a water right can be lost for nonuse or abandonment. Utah Code Ann. § 73–1–4. The judicial role in maintaining the system of beneficial use, and implicitly the place of water in the economy of our state, is to require strict adherence to the statutory sanctions. *Baugh v. Criddle*, 19 Utah 2d 361, 431 P.2d 790, 791 (1967). We have held that a departure from this principle of strict adherence is justified only in a "rare and highly equitable case." *Id.* 431 P.2d at 791–92.

The facts in this case do not present an obvious instance of statutory forfeiture for abandonment and nonuse. Although the Town's leasing of its water right violated the state constitution, it does not follow that the action should work a statutory forfeiture of the Town's water right. The statute provides that a water right ceases when the appropriator ceases to "use" it. Utah Code Ann. § 73–1–4. In this case, the Town did not "cease to use" the water; instead, it used the water for an unconstitutional purpose. The constitutional violation, however, does not necessarily or logically satisfy the statutory requirements for forfeiture, which are concerned with entirely different policy considerations. The water in this case was continuously applied to a beneficial use from which the Town also benefitted, even though it violated the constitution in acquiring the benefit.[11] Therefore, without modifying our general principle of strict adherence to the statutory sanctions requiring forfeiture for the nonuse of a water right, we affirm the trial court's conclusion that there was no statutory forfeiture of the Town's water rights on the facts of this case.

In conclusion, we affirm the trial court's decree to the extent it concludes that (1) the Eskelsens and Norman have no interest in water rights claimed pursuant to Ruby Davis's 1957 notice of diligence claim, and (2) the Eskelsens' 1983 application to appropriate water rights is valid but subject to a senior right in the Town to ⅓ second foot of water and subject to the conditions of the state engineer's memorandum decision dated April 27, 1984.[12] The question of the status of the 1974 application is remanded for a specific factual determination consistent with this opinion.

HALL, C.J., HOWE, Associate C.J., and STEWART and ZIMMERMAN, JJ., concur.

---

**11.** The water was apparently contaminated and generally unsuitable for culinary use. The lease arrangement at least insured that the water was beneficially used for irrigation, and there was no actual loss to the citizens of Perry (despite the constitutional violation) because the tech-nology to render the water usable for town purposes was apparently not available during the term of the lease.

**12.** *See supra* note 6.