*This opinion is subject to revision before final publication in the Pacific Reporter*

**2013 UT 54**

IN THE

# SUPREME COURT OF THE STATE OF UTAH

DELTA CANAL CO., MELVILLE IRRIGATION CO., ABRAHAM
IRRIGATION CO., DESERET IRRIGATION CO.,
and CENTRAL UTAH WATER CO.,
*Plaintiffs and Appellants*,
*v.*
FRANK VINCENT FAMILY RANCH, LC,
*Defendant and Appellee.*

No. 20120470
Filed August 16, 2013

Fourth District, Fillmore Dep't
The Honorable James M. Brady
No. 080700087

Attorneys:

John H. Mabey Jr., David C. Wright, Salt Lake City,
Richard Waddingham, Delta, for appellants

Edwin C. Barnes, Steven E. Clyde, Robert D. Andreasen,
Jonathan S. Clyde, Salt Lake City, for appellee

John E. Swallow, Att'y Gen., Norman K. Johnson,
L. Ward Wagstaff, Julie I. Valdes, for amicus curiae

JUSTICE DURHAM authored the opinion of the Court, in which
CHIEF JUSTICE DURRANT, ASSOCIATE CHIEF JUSTICE NEHRING,
JUSTICE PARRISH, and JUSTICE LEE joined.

JUSTICE DURHAM, opinion of the Court:

## INTRODUCTION

¶1 Appellants Delta Canal Company, Melville Irrigation Company, Abraham Irrigation Company, Deseret Irrigation Company, and Central Utah Water Company (collectively, Irrigation Companies) and Appellee Frank Vincent Family Ranch, LC (Vincent) are water-rights holders on the Sevier River system. The Irrigation Companies claim that Vincent's water right has been partially forfeited and partially abandoned. The district court granted summary judgment to Vincent. We reverse and remand.

## BACKGROUND

¶2 The Irrigation Companies are nonprofit Utah corporations that distribute water to their shareholders for irrigation of agricultural land in Millard County. They filed a complaint in district court alleging that Vincent's water right had been partially forfeited and partially abandoned.

¶3 The water right in question was awarded to the Samuel McIntyre Investment Company (McIntyre) in 1936 during a general adjudication of the Sevier River system.[1] Leading up to the general adjudication, the state engineer catalogued all water usage in the Sevier River system and prepared a proposed determination of water rights. The state engineer proposed to award McIntyre 5,000 acre feet of water annually to irrigate 1,051.5 acres of land.

¶4 The district court heard and addressed objections to the proposed determination and then issued a final decree, referred to as the "Cox Decree." The Cox Decree awarded McIntyre twenty-two cubic feet of water per second from March 1 through October 1 of each year. This water included a storage component from April 16 to October 1, permitting McIntyre to store 90% of its allocation in the Sevier Bridge Reservoir for future use.

¶5 Vincent purchased this water right in 1998, when it also purchased the McIntyre farm. Vincent has used the farm and water right to grow crops, such as corn, hay, and alfalfa, and to run a commercial bird-hunting operation.

¶6 The Irrigation Companies allege that during the twenty-year limitations period preceding the filing of their complaint in 2008,[2] Vincent and its predecessor forfeited and abandoned a portion of the water right. They allege that from 1988 to 1998, McIntyre irrigated only 830 of its 1,051.5 acres, and that after 1998, Vincent cultivated fewer than 900 of the 1,051.5 acres.

¶7 Vincent contends that it was unable to cultivate all 1,051.5 acres because in times of water shortages, the Sevier River Commissioner reduced its diversion right. Vincent further argues that it should not be faulted for failing to use water between March

---

[1] See *Green River Canal Co. v. Olds*, 2004 UT 106, ¶¶ 3–7, 110 P.3d 666, for an overview of the general adjudication process.

[2] When the Irrigation Companies filed their complaint on May 1, 2008, Utah Code section 73-1-4(3)(c)(i) provided that forfeiture actions must be "commenced within 15 years from the end of the latest period of nonuse of at least five years." Amendments to the statute took effect on May 5, 2008. *See* 2008 Utah Laws 2559–60.

1 and April 15 because water could not be beneficially used while the ground was unprepared and sometimes frozen, and there was no storage right during this period. Vincent also defends on the grounds that it irrigated many acres of natural habitat for commercial bird hunting.

¶8      The parties also disagree on the purely legal question of whether partial forfeiture and partial abandonment were available in Utah before 2002. In 2002, the legislature amended Utah Code section 73-1-4 (the Forfeiture Statute) to clarify that partial forfeiture was an available remedy. *See* 2002 Utah Laws 120. As amended, the Forfeiture Statute provided that "the water right *or the unused portion of that water right*" could be forfeited. UTAH CODE § 73-1-4(3)(a) (subsequent to 2002 amendments) (emphasis added). Before the amendment, the code stated only that "the water right" could be forfeited. UTAH CODE § 73-1-4(1)(a) (prior to 2002 amendments).

¶9      The district court held that Utah law did not provide for partial forfeiture or partial abandonment before 2002, and that Vincent was protected from partial forfeiture and partial abandonment after 2002 by an exception located in Utah Code section 73-1-4(3)(f)(i) (subsequent to 2002 amendments). *See* 2002 Utah Laws 120. This exception stated that "[t]he provisions of this section shall not apply . . . to those periods of time when a surface water source fails to yield sufficient water to satisfy the water right, or when groundwater is not available because of a sustained drought." The court held that because Vincent did not receive an uninterrupted flow of twenty-two cubic feet of water per second during any years between 2002 and the filing of the complaint, the Irrigation Companies were "precluded from claiming either a partial forfeiture, or a partial abandonment." The court granted summary judgment to Vincent, and the Irrigation Companies appealed. We have jurisdiction under Utah Code section 78A-3-102(3)(j).

## STANDARD OF REVIEW

¶10     "We review a district court's grant of summary judgment for correctness." *Basic Research, LLC v. Admiral Ins. Co.*, 2013 UT 6, ¶ 5, 297 P.3d 578 (internal quotation marks omitted).

## ANALYSIS

¶11     We begin by examining the pre-2002 Forfeiture Statute in conjunction with Utah Code section 73-1-3 (the Beneficial Use Statute). We determine that the pre-2002 Forfeiture Statute unambiguously permitted partial forfeiture. We next conclude that the exception located in Utah Code section 73-1-4(3)(f)(i) (subsequent

to 2002 amendments) is a codification of the physical-causes exception—not a rule that forfeiture can never occur when a water right is not fully satisfied. We also clarify that abandonment is a common-law cause of action that requires a showing of intent to relinquish. Finally, we clarify the proper measure of Vincent's water right and address other issues likely to arise on remand.

## I. PARTIAL FORFEITURE HAS ALWAYS BEEN AVAILABLE IN UTAH BECAUSE IT IS INHERENT IN THE PRINCIPLE OF BENEFICIAL USE

### *A. Partial Forfeiture in Our Case Law*

¶12    The parties dispute whether partial forfeiture was available in Utah before 2002. Vincent argues that it was not available, relying in part on *Eskelsen v. Town of Perry*, 819 P.2d 770, 775 n.9 (Utah 1991), where we stated in dicta that "[t]he question of partial forfeiture is not addressed in our statutes and has never been directly before this court. . . ." But closer investigation of our case law reveals that this court has always assumed that partial forfeiture was an available remedy.

¶13    In 1897, we stated,

> The great weight of modern authority is to the effect that when an appropriator permits part of the water appropriated to run to waste, or fails to use a certain portion of it for some beneficial use or purpose, *he can only hold that part of the water which has been actually applied to a beneficial use*, and his right is limited to the quantity so used.

*Becker v. Marble Creek Irrigation Co.*, 49 P. 892, 893 (Utah 1897) (emphasis added). In 1943, we heard an appeal involving an allegation of partial forfeiture of a water right. *Rocky Ford Irrigation Co. v. Kents Lake Reservoir Co.*, 135 P.2d 108 (Utah 1943). We declared that "if there were a five year continuous period during which [the appropriator] failed to use material amounts of available water, we should hold that a forfeiture *of at least part of its right* has occurred by virtue of this nonuse." *Id.* at 112 (emphasis added). We then applied this standard to the facts of the case and determined that no forfeiture had occurred because the appropriator had fully used its water right in one relevant year and was protected by the "physical causes" exception[3] in other years. *Id.* at 111–13.

---

[3] We explained the physical causes exception as follows:
(continued...)

¶14    More recently, in *Eskelsen*, we noted that "all of the policy reasons that support forfeiture as a general principle would be furthered by, and hindered without, partial forfeiture." 819 P.2d at 775 n.9. Finally, in 1997, we said that "[t]he extent of anyone's right to use water . . . is limited to that amount which can be put to beneficial use. Thus, the nonuse of water for five years by an appropriator works *a loss of the right to the unused water. . . .*" *Platt v. Town of Torrey*, 949 P.2d 325, 331–32 (Utah 1997) (emphasis added) (citation omitted).

¶15    These cases, which span a century, show that this court recognized and applied the doctrine of partial forfeiture long before 2002. Although we have not previously linked the doctrine of partial forfeiture to statutory language, we have always acted on the assumption that partial forfeiture was available. This appeal presents us with the opportunity to situate the doctrine of partial forfeiture within our statutes.

*B. The Language of the Forfeiture Statute*

¶16    "Our primary objective when interpreting statutes is to give effect to the legislature's intent." *State v. Harker*, 2010 UT 56, ¶ 12, 240 P.3d 780 (internal quotation marks omitted). To discern legislative intent, we begin by examining a statute's plain language and construing it "in harmony with other statutes in the same chapter and related chapters." *Id.* (internal quotation marks omitted). "When viewing the act as a whole does not eliminate duplicative yet plausible meanings, the statute is ambiguous, and we may resort to extrinsic interpretive tools to resolve the ambiguity." *R & R Indus. Park, L.L.C. v. Utah Prop. & Cas. Ins. Guar. Ass'n*, 2008 UT 80, ¶ 26, 199 P.3d 917 (internal quotation marks omitted).

---

[3] (...continued)
"[F]orfeiture will not operate in those cases where the failure to use is the result of physical causes beyond the control of the appropriator such as floods which destroy his dams and ditches, dr[o]ughts, etc., where the appropriator is ready and willing to divert the water when it is naturally available." *Rocky Ford,* 135 P.2d at 111. *See infra* ¶¶ 30–32.

¶17    Before 2002, the Forfeiture Statute provided,[4]

> When an appropriator or the appropriator's successor
> in interest abandons or ceases to use water for a period
> of five years, the water right ceases and the water
> reverts to the public, unless, before the expiration of the
> five-year period, the appropriator or the appropriator's
> successor in interest files a verified application for an
> extension of time with the state engineer.

UTAH CODE § 73-1-4(1)(a) (prior to 2002 amendments). The statute referred to "water" and "the water right" without specifying whether those terms referred to divisible amounts of an appropriator's entitlement. The statute could be reasonably interpreted to mean that when an appropriator ceases to use any portion of a water right, that portion of the water right ceases. But it could also be reasonably interpreted to mean that only when an appropriator ceases entirely to use water from a previous appropriation does that right cease. Thus, when viewed in isolation, the pre-2002 Forfeiture Statute is ambiguous.

¶18    But we do not interpret statutes in isolation; we take interpretive guidance from related statutes. *See Harker*, 2010 UT 56, ¶ 12. Here, we seek insight into the legislature's purpose for the Forfeiture Statute in the neighboring Beneficial Use Statute, which provides that "[b]eneficial use shall be the basis, the measure and the limit of all rights to the use of water in this state." UTAH CODE § 73-1-3; *see Butler v. Pinecrest Pipeline Operating Co.*, 2004 UT 67, ¶ 31, 98 P.3d 1 (reading the Forfeiture Statute "in conjunction with" the Beneficial Use Statute). As we explain below, the Beneficial Use Statute erases all ambiguity from the Forfeiture Statute and requires us to conclude that the pre-2002 Forfeiture Statute permitted partial forfeiture.

---

[4] The statute was also amended in 1996. Prior to 1996, it read:

> When an appropriator or his successor in interest
> abandons or ceases to use water for a period of five
> years, the right ceases, unless, before the expiration of
> the five-year period, the appropriator or his successor
> in interest files a verified application for an extension
> of time with the state engineer.

UTAH CODE § 73-1-4(1)(a) (prior to 1996 amendments). Because the differences between the pre-1996 version and the post-1996 version of the statute do not affect our analysis, we will for simplicity's sake address only the post-1996 version.

### C. Beneficial Use

¶19    In Utah and other arid western states, "a drop of water is a drop of gold." *Carbon Canal Co. v. Sanpete Water Users Ass'n*, 425 P.2d 405, 407 (Utah 1967). Western state governments are "vitally interested in seeing that none of the [state's] waters are allowed to run to waste or go without being applied to a beneficial use." *Eskelsen*, 819 P.2d at 775. In all western states, the concept of "beneficial use" has been codified, and in many states, including Utah, it has been enshrined in the state constitution. UTAH CONST. art. XVII, § 1 ("All existing rights to the use of any of the waters in this State for any useful or beneficial purpose, are hereby recognized and confirmed.") (no change since 1896); UTAH CODE § 73-1-3 ("Beneficial use shall be the basis, the measure and the limit of all rights to the use of water in this State.") (no change since 1903 except for renumbering, *see* 1903 Utah Laws 101); Janet C. Neuman, *Beneficial Use, Waste, and Forfeiture: The Inefficient Search for Efficiency in Western Water Use*, 28 ENVTL. L. 919, 923 (1998) ("The water codes of all of the western states and some state constitutions include the term 'beneficial use.'").

¶20    In Utah, the beneficial use principle existed at common law prior to its codification. We held in *Sigurd City v. State*, 142 P.2d 154, 157 (Utah 1943) that water rights acquired before the beneficial use principle was codified were nonetheless subject to the beneficial use requirement because beneficial use "has always been the basis of the right to appropriate and use waters in this state." Indeed, even prior to statehood, the leaders of the Church of Jesus Christ of Latter-day Saints "conditioned the privilege of owning property, including water, on the productive, non-speculative use of the property." 4 WATER AND WATER RIGHTS, Part XI.B, Utah, § III(F) (Amy K. Kelley ed., 3rd ed. 2013).

¶21    "[B]eneficial use" is not statutorily defined in many western states, including Utah, and even in states with statutory definitions, those definitions are often framed in general terms that require further explanation. *See, e.g.,* N.D. CENT. CODE § 61-04-01.1 (2013) ("'Beneficial use' means a use of water for a purpose consistent with the best interests of the people of the state."). Thus, the concept of beneficial use has developed largely in common-law fashion, with state courts borrowing heavily from one another's opinions. Neuman, *supra* ¶ 19, at 925. As the Ninth Circuit observed, "on the point of what is beneficial use the law is general and without significant dissent. . . . [U]nless it is shown that a state applies a special rule of law on a relevant point, it is proper to apply general

law in defining beneficial use." *United States v. Alpine Land & Reservoir Co.*, 697 F.2d 851, 854 (9th Cir. 1983) (citation omitted) (internal quotation marks omitted).

¶22    In western water law generally, "beneficial use has two different components: the type of use and the amount of use." Neuman, *supra* ¶ 19, at 926. Over time, the types of use considered to be beneficial have expanded to encompass not only economically beneficial uses, but also uses that promote conservation, recreation, and other values deemed to be socially desirable. 1 WATER AND WATER RIGHTS, *supra* ¶ 20, at § 12.02(c)(2). In some states, legislatures have identified uses that are per se beneficial or non-beneficial. *E.g.* MONT. CODE ANN. § 85-2-102(4) (listing uses deemed to be beneficial); OKLA. STAT. tit. 27, § 7.6 ("No Oklahoma water from any source shall be used in connection with the transportation, maintenance or operation of a coal slurry pipeline within or through the State of Oklahoma."). Some state legislatures have also specified priorities to govern usage in times of shortages. *E.g.* ARIZ. REV. STAT. ANN. § 45-157 (prioritizing water uses based on "[t]he relative values to the public").[5] Courts have also identified beneficial and non-beneficial uses of water. *E.g. Neubert v. Yakima-Tieton Irrigation Dist.*, 814 P.2d 199, 204 (Wash. 1991)(en banc) (holding that using water to protect crops from frost is beneficial); *Burlington Ditch Reservoir & Land Co. v. Metro Wastewater Reclamation Dist.*, 256 P.3d 645, 663 (Colo. 2011).

¶23    The touchstone of the second requirement of beneficial use is reasonableness: the amount of water used must be reasonable. Usage of water in accordance with "the general custom of the locality" is usually reasonable, "so long as the custom does not involve unnecessary waste." *Tulare Irrigation Dist. v. Lindsay-Strathmore Irrigation Dist.*, 45 P.2d 972, 997 (Cal. 1935). An appropriator who diverts water in excess of the appropriator's "actual requirements and allow[s] the excess to go to waste acquire[s] no right to the excess." *State Dep't of Ecology v. Grimes*, 852 P.2d 1044, 1051 (Wash. 1993)(en banc). The same is true for water diverted in excess of reasonable requirements and used inefficiently. "A particular use must not only be of benefit to the appropriator, but it must also be a reasonable and economical use of the water in view of other present and future demands upon the source of supply." *Id.*

---

[5] Utah repealed its list of water use priorities in 2009. *See* 2009 Utah Laws 1343.

¶24   In Utah, as in many other states, "our statutory and decisional law have been fashioned in recognition of the desirability and of the necessity of insuring . . . the most continuous beneficial use of all available water with as little waste as possible." *Green River Canal Co. v. Thayn*, 2003 UT 50, ¶ 34, 84 P.3d 1134 (internal quotation marks omitted); *see also Little Walla Irrigation Union v. Finis Irrigation Co.*, 124 P. 666, 668 *modified on reh'g sub nom. Little Walla Walla Irrigation Union v. Finis Irrigation Co.*, 125 P. 270 (Or. 1912) ("It is the policy of the law that the best [irrigation] methods should be used and no person allowed more water than is necessary."). This court declared over fifty years ago that "[w]asteful methods [of irrigation] must be discontinued." *In re Water Rights of Escalante Valley Drainage Area*, 348 P.2d 679, 682 (Utah 1960). Since then, Utah's population has trebled, making the need for water conservation even more pressing. *See* Laura Summers, Utah Foundation, *Research Brief: The Impacts of Utah's Population Growth* (Oct. 9, 2008), http://www.utahfoundation.org/reports/?page_id=270 (providing a population graph and discussing increasing demand for water). Thus, all water users must "pay careful attention to the manner of use," and courts, when appropriate, should exercise their "power to order improved methods of conveying, measuring and diverting water so as to assure the greatest possible use of the natural resource." *In re Water Rights of Escalante Valley Drainage Area*, 348 P.2d at 682; *see Grimes*, 852 P.2d at 1051–54 (holding that an appropriator's water right was properly limited to allow only a one-fourth conveyance loss, rather than the user's previous "one-half to two-thirds" conveyance loss).

¶25   These requirements of beneficial use—beneficial purpose and reasonable amount—are ongoing requirements. *Eskelsen*, 819 P.2d at 775 ("An appropriative water right depends on beneficial use for its continued validity."); *State v. Hagerman Water Right Owners, Inc.*, 947 P.2d 400, 408 (Idaho 1997) (holding that applying water to beneficial use is "a continuing obligation"); Neuman, *supra* ¶ 19, at 932 ("The case law is thus consistent, both over time and throughout the West, in applying actual beneficial use as an ongoing requirement in maintaining appropriative water rights."). If an appropriator ceases to beneficially use a water right, the wasted or unused water is made available to other appropriators. In Utah, the process for making such water available to other appropriators is governed by the Forfeiture Statute.

### D. Beneficial Use and the Forfeiture Statute

¶26 Vincent would have us hold that under the Forfeiture Statute, a water right can be fully maintained through partial use. This rule would be inconsistent with the concept of beneficial use. *See Hagerman*, 947 P.2d at 407–08 (holding that the statutory interpretation advanced by the party opposing partial forfeiture would be inconsistent with the beneficial use policies underlying Idaho's forfeiture statute). As we explained in *Eskelsen*, the policy underlying Utah water law is to prevent the state's water from being "allowed to run to waste or go without being applied to a beneficial use for any great number of years." 819 P.2d at 775–76 (internal quotation marks omitted). This policy "would be furthered by, and hindered without, partial forfeiture." *Id.* at 775 n.9. Vincent's rule would effect the opposite result: appropriators would be able to maintain their entire water rights while wasting or otherwise failing to beneficially use material amounts of that water.

¶27 Under the principle that we interpret statutes in harmony with neighboring provisions, *Harker*, 2010 UT 56, ¶ 12, we interpret the Beneficial Use Statute and the Forfeiture Statute in harmony with one another. If beneficial use is to be "the basis, the measure and the limit" of water rights in Utah, as required by the Beneficial Use Statute, then partial forfeiture must be available. We agree with all the other western state courts that have addressed this question and found that forfeiture and partial forfeiture are inherent in the very concept of beneficial use. *See, e.g., United States v. Alpine Land & Reservoir Co.*, 27 F. Supp. 2d 1230, 1243 (D. Nev. 1998) ("Under the established tenet that a beneficial use is the measure and limit of a water right, when the necessity for the use of the water ceases to exist or is reduced, the extent of the water right is limited to the extent of the beneficial purpose which remains."); *Smith v. Hawkins*, 52 P. 139, 140 (Cal. 1898) ("If plaintiffs could forfeit their entire right of appropriation by nonuser, equally will they be held to forfeit less than the whole by like failure."); *Hagerman*, 947 P.2d at 407–08 (holding that partial forfeiture is available in Idaho and that a contrary holding would be inconsistent with the principle of beneficial use); *In re Musselshell River Drainage Area*, 840 P.2d 577, 579 (Mont. 1992) ("The controlling principle upon which water 'rights' in Montana are perfected and continue to possess legal validity is that of beneficial use; water rights cease when the water is no longer applied to a beneficial use." (internal quotation marks omitted)); *In re Birdwood Irrigation Dist.*, 46 N.W.2d 884, 888 (Neb. 1951) ("We conclude that the power to cancel the whole of an appropriation for irrigation purposes for nonuser carries with it the right to cancel a part.").

¶28   We hold that the only plausible reading of the Forfeiture Statute, when viewed in conjunction with the Beneficial Use Statute, is that a water right may be forfeited either in whole or in part. Under pre-2002 versions of the Forfeiture Statute, a water right has been partially forfeited if, during the statutory period, the appropriator "failed to use material amounts of available water" without securing an extension of time from the state engineer. *Rocky Ford*, 135 P.2d at 112; UTAH CODE § 73-1-4(1)(a) (prior to 2002 amendments) (permitting an appropriator to file for an extension of time). Accordingly, we reverse the district court's grant of summary judgment as to the pre-2002 partial forfeiture claim and remand for the claim to be reconsidered in a manner consistent with this opinion.

## II. THE 2002 VERSION OF THE FORFEITURE STATUTE PROVIDES FOR FORFEITURE OF AVAILABLE WATER THAT IS NOT BENEFICIALLY USED

¶29   The Irrigation Companies also appeal the district court's interpretation of the following exemption in the post-2002 Forfeiture Statute: "The provisions of this section shall not apply . . . to those periods of time when a surface water source fails to yield sufficient water to satisfy the water right, or when groundwater is not available because of a sustained drought." UTAH CODE § 73-1-4(3)(f)(i) (2002). The district court interpreted this exemption to mean that no forfeiture of any amount can occur during periods when a water right is not fully satisfied. Although this interpretation is reasonable when the text of the exemption is viewed in isolation, it is unreasonable when the exemption is viewed in conjunction with the Beneficial Use Statute.

¶30   Under the district court's interpretation of the exemption, a small deficit in available water could protect a water right from forfeiture even if most of the water were actually available but not put to beneficial use. This result is inconsistent with the Beneficial Use Statute, under which the continuing validity of a water right depends on its being used. *See supra* ¶¶ 19–25. Thus, we reject the district court's interpretation and hold that this exemption is a codification the common-law physical-causes exception we applied in *Rocky Ford*.

¶31    In *Rocky Ford*, we explained that

the courts have uniformly held that forfeiture will not operate in those cases where the failure to use is the result of physical causes beyond the control of the appropriator such as floods which destroy his dams and ditches, dr[o]ughts, etc., where the appropriator is ready and willing to divert the water when it is naturally available.

*Rocky Ford Irrigation Co. v. Kents Lake Reservoir Co.*, 135 P.2d 108, 111 (Utah 1943). We then applied the physical-causes exception, holding that no forfeiture had occurred because the years of inadequate use were punctuated by years in which "no water whatever was available." *Id.* There was no consecutive span of five years (the statutory forfeiture period at the time) in which the defendant failed to use material amounts of available water. *Id.* at 113. Therefore, because of the physical-causes exception, the water right was not forfeited in whole or in part. *Id.*

¶32    Utah Code section 73-1-4(3)(f)(i) (2002)[6] codifies the physical-causes exception, protecting appropriators from forfeiture insofar as they beneficially use material amounts of available water. Even during a shortage, if an appropriator fails to beneficially use material amounts of available water, the amount of available but unused water may be forfeited. The district court's contrary view would create a safe harbor for waste and non-use during times of shortage, which is precisely when efficiency and conservation are most imperative. We therefore reverse the grant of summary judgment as to the post-2002 partial-forfeiture claim and remand for the claim to be reconsidered in a manner consistent with this opinion.

### III. ABANDONMENT OF A WATER RIGHT IS A COMMON-LAW CLAIM, NOT A STATUTORY CLAIM

¶33    The Irrigation Companies also allege that Vincent abandoned part of its water right. The district court treated the abandonment claim as a claim under the Forfeiture Statute, which states that forfeiture occurs when an appropriator "*abandons* or ceases to use" a water right. UTAH CODE § 73-1-4(3)(a) (2002) (emphasis added.) The district court granted Vincent summary judgment on the abandonment claim based on Utah Code section 73-

---

    [6] The current version of this exemption is located at Utah Code section 73-1-4(2)(e)(iii).

1-4(3)(f)(i) (subsequent to 2002 amendments)—the exemption that we hold to be a codification of the physical-causes exception. *See supra* ¶ 30. Summary judgment on that basis was improper for two reasons. First, the district court erred in interpreting this exemption. *See supra* ¶¶ 29–32. Second, abandonment of a water right is not a statutory claim. Although a form of the word "abandon" has been present in the Forfeiture Statute since it was originally promulgated in 1903, our jurisprudence has treated abandonment as a common-law claim, independent of the Forfeiture Statute.

¶34　In 1943, we observed,

> Abandonment is a separate and distinct concept from that of forfeiture. . . . While upon the one hand, abandonment is the relinquishment of the right by the owner with the intention to forsake and desert it, forfeiture upon the other hand, is the involuntary or forced loss of the right, caused by the failure of the appropriator or owner to do or perform some act required by the statute.

*Wellsville E. Field Irrigation Co. v. Lindsay Land & Livestock Co.*, 137 P.2d 634, 643 (Utah 1943) (internal quotation marks omitted). A few years later, we addressed the presence of the term "abandon" in the Forfeiture Statute:

> Although the statute uses the term "abandon or cease to use water for a period of five years," we have recognized that abandonment is a separate and distinct concept from that of forfeiture in that an abandonment requires a definite intent to relinquish the right to use and ownership of such water right and does not require any particular period of time, but the forfeiture herein provided for requires that the appropriator cease to use the water for a period of five years before it is complete. . . . The abandonment of a water right to the public the same as the abandonment of any other property or right requires that a prior appropriator intentionally release or surrender such right to the public. To thus lose a water right does not necessarily depend on this statute nor require nonuse of such right for any particular length of time.

*Rich County-Otter Creek Irrigation Co. v. Lamborn*, 361 P.2d 407, 409 (Utah 1961) (footnote omitted). We see no reason to depart from this long-standing precedent.

¶35   We reverse the grant of summary judgment on the abandonment claim and remand for the claim to be considered under our common-law precedents. Unlike forfeiture, abandonment has no time element. Instead, it has an intent requirement. To succeed in this claim, the Irrigation Companies must show that Vincent or its predecessor intentionally relinquished a portion of the water right. *See id.*

## IV. PROPER MEASURE OF VINCENT'S WATER RIGHT

¶36   Water rights can be measured in several ways. A flow allowance is the maximum rate at which water may be diverted and can be measured in cubic feet per second or in miner's inches (approximately 500–700 milliliters per second). A volume allowance is the maximum quantity of water that may be diverted during a given irrigation season and is measured in acre feet (the amount of water needed to cover one acre to a depth of one foot) or in cubic feet. Water "duty" is the amount of water needed to irrigate an acre in a given geographic region and is generally expressed in acre feet per acre. The Utah legislature has directed courts to measure water in cubic feet per second and in acre feet. *See* UTAH CODE § 73-1-2.[7]

¶37   Here, the authoritative description of Vincent's water right is found in the Cox Decree,[8] issued in 1936 at the conclusion of a general adjudication of the Sevier River system. The Cox Decree specifies only the flow component of Vincent's water right: twenty-two cubic feet per second (c.f.s.). As the California Supreme Court explained in 1935, water rights are often expressed in terms of flow when river levels are unpredictable and appropriators "ha[ve] to take the water when, as[,] and if it [is] in the stream." *Tulare Irrigation Dist. v. Lindsay-Strathmore Irrigation Dist.*, 45 P.2d 972, 996 (Cal. 1935). In such situations, flow awards cannot be thought of as "continuous awards" but are limited to the amount of water the appropriator has put and continues to put to beneficial use. *Id.* at 996–97.

---

[7] In Utah, water duty is not a component of a water right. However, because water duties established by the state engineer are indicative of whether the water applied to a given piece of land is beneficially used, water duty could be presented as evidence of partial forfeiture through waste. *See supra* ¶¶ 23–24.

[8] The Cox Decree is available on the website of the Utah Division of Water Rights at http://www.waterrights.utah.gov/adjdinfo/decrinfo/default.asp.

¶38 Here, we do not interpret Vincent's water right as a continuous award. If Vincent were to constantly divert twenty-two c.f.s. during an irrigation season, it would draw more than 9,000 acre feet of water, which is far more than Vincent or its predecessors have ever used. The proposed determination drawn up in preparation for the 1936 general adjudication of the Sevier River system indicated that Vincent's predecessor annually used 5,000 acre feet of water. Because the Cox Decree does not indicate that this amount was disputed or altered, we agree with the district court that it is reasonable to infer that the volume component of Vincent's water right is 5,000 acre feet. Thus, Vincent's water right consists of a maximum rate of diversion of twenty-two c.f.s. and a total volume allowance of 5,000 acre feet.[9]

## IV. ISSUES LIKELY TO ARISE ON REMAND

### A. Proper Forfeiture Analysis

¶39 Forfeiture occurs when an appropriator fails to use material amounts of a water allowance during five or seven consecutive years[10] without securing an extension of time from the state engineer. *Rocky Ford Irrigation Co. v. Kents Lake Reservoir Co.*, 135 P.2d 108, 112 (Utah 1943); UTAH CODE § 73-1-4(2)(a). Because most flow allowances are not "continuous awards," *supra* ¶ 37, appropriators do not forfeit any part of their right by failing to divert water at the maximum flow allowance. A forfeiture analysis should instead focus on volume. If during five consecutive irrigation seasons, an appropriator has failed to use material amounts of its volume allowance, a forfeiture has occurred. The volume component of the water right should be reduced by the unused amount. The

---

[9] To simplify future water disputes, we encourage district courts conducting general adjudications to define water rights in terms of both flow and volume. Both are necessary to "fully and completely define the rights of . . . claimants to the use of the water." UTAH CODE § 73-4-12; *see also Tulare Irrigation Dist.*, 45 P.2d at 996–97 (holding that to prevent waste and to clarify entitlements, water rights "should be fixed in cubic feet per second, with a maximum limitation in acre feet, measured, of course, by the maximum number of acre feet used by each appropriator in the past").

[10] The statutory forfeiture period has changed several times. At all times relevant to this appeal, the period was five years. UTAH CODE section 73-1-4(1)(a) (prior to 2002 amendments); *id.* 73-1-4(3)(a) (subsequent to 2002 amendments). The current period is seven years. *Id.* 73-1-4(2)(a) (2013).

flow component may be reduced in proportion to the volume reduction, at the district court's discretion.

¶40    Materiality, or substantiality, is another important component of a forfeiture analysis. UTAH CODE § 73-1-4(3)(f)(iii) (2002) (stating that forfeiture does not occur "when a water user has beneficially used substantially all of a water right within a five-year period"); *Rocky Ford,* 135 P.2d at 112. At the beginning of each growing season, farmers plant their fields according to predictions of how much water will be available that year. If snow levels and other indicators suggest a dry summer, a farmer may reasonably choose not plant all of her fields. If, in fact, shortages turn out to be less severe than predicted, the farmer in retrospect may have been able to plant slightly more. However, a small amount of non-use, especially when resulting from a reasonable prognostication of how much water would be available, will generally not support a forfeiture. We cannot expect farmers to predict the weather with more certainty than climatologists, and the materiality exemption protects them when they fail to do so. The materiality exemption also serves to deter forfeiture claims premised on de minimis non-use.

¶41    Finally, the number of acres irrigated is not determinative in a forfeiture analysis, though it may be relevant insofar as it indicates whether water usage is beneficial. Farmers may reduce the total acres irrigated to grow a more water-intensive crop, or vice versa, so long as they beneficially use their full entitlement. The number of acres irrigated need not match the number listed on a proposed determination or a final decree from a general adjudication.[11] The central question in any forfeiture proceeding is whether the appropriator used all of its water allowance in a reasonable manner and for a beneficial purpose.

*B. Early Water*

¶42    The parties dispute whether the water available to Vincent and its predecessor between March 1 and April 15 should be counted as available water for purposes of forfeiture analysis. The Cox Decree states that the water right runs from March 1 through October 1. It further states that Vincent's predecessor,

---

[11] However, changes to the "point of diversion, place of use, or purpose of use" are subject to the approval of the state engineer. *See* UTAH CODE § 73-3-3(1)(a), (4)(a).

> the Samuel McIntyre Investment Company[,] shall have the right to the use of the water allocated . . . as above set forth, to be used by direct diversion from March 1 to April 15, both dates inclusive. From April 16 to October 1 in each and every year [it] shall have the right to store and impound in the Sevier Bridge Reservoir 90% of all the water yielded by said river for satisfying [its] rights from April 16 to October 1.

¶43   As discussed in the previous section, the focus of a forfeiture analysis should be on volume. Thus, if Vincent and its predecessor used substantially all of their allotment of 5,000 acre feet, they have not forfeited their water right, even if they did not use any water between March 1 and April 15. Distinguishing the pre-irrigation season would be significant only in a drought year, when the physical-causes exception applies. Under the physical-causes exception, unavailable water cannot be forfeited, but water that is available but not beneficially used can. *See supra* ¶ 32. We are not persuaded that the Cox Decree, the proposed determination, or any other authority supports a categorical exclusion of early water from this physical-causes exception analysis. However, on remand, Vincent may seek to persuade the district court that under the physical causes exception, this early water was not available for use because the ground was not ready to receive it.

### C. Irrigation of Natural Habitats

¶44   The district court held that genuine issues of material fact precluded summary judgment on the questions of (1) how much water Vincent used on its bird hunting grounds and (2) whether such use was beneficial. We do not disturb this ruling but wish to reiterate that "watering indigenous vegetation generally is not a beneficial use." *Butler, Crockett & Walsh Dev. Corp. v. Pinecrest Pipeline Operating Co.*, 2004 UT 67, ¶ 55, 98 P.3d 1. An appropriator has the burden to show that under "the individual facts and circumstances of [the appropriator's] situation," watering a natural habitat is beneficial. *Id.* Triers of fact should be wary of hindsight justifications for waste and of fanciful uses whose primary purpose is to protect a water right from forfeiture. *See id.* ¶ 54.

### CONCLUSION

¶45   A water right is maintained only to the extent it is used efficiently and for a proper purpose. Summary judgment was improperly granted in this case for the reasons explained above. We remand for further proceedings consistent with this opinion.